Vol. 107]      SEPTEMBER TERM, 1899.      191

Louisville & Nashville R. R. Co. v. Chesapeake & Ohio Ry. Co., &c.

CASE 36—ACTION ON CONTRACT—OCT. 31

# Louisville & Nashville R. R. Co. v. Chesapeake & Ohio Railway Co., Etc.

107 191
d111 744

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

CONTRACT—CONSTRUCTION—MAINTENANCE OF WAY.—Damages paid by appellant for the death of an employe who was thrown from a handcar while engaged in repairing the road bed used jointly by the appellant and appellee constitute a part of the cost of maintenance of way and are apportionable between the parties in accordance with the seventh section of the contract between the parties which was in this language: "In addition to the fixed rentals or interest moneys and other payments to be paid, as hereinafter provided, the second parties agree to pay such proportion of the cost of maintenance, repairs, renewals and improvements of that part of the road jointly used, and such proportion of the wages of telegraph operators and other employes and officer in the joint service of the two parties under this contract as the number of engines and car miles of the parties of the second part run over said railway bears to the total number of engines and car miles run over said railway, it being understood and agreed that no charge shall be made for services of general and accounting officers of the first party, except for such as are actually employed in conducting the business of this particular part of the lines of the party of the first part;" and not within section four which is in this language: "Agents, telegraph operators, train dispatchers, section foreman, laborers, watchmen, switchmen, or any other persons employed in the maintenance or care of, or operation of the property jointly used (not including station agents, except when acting as regular telegraph operators, nor employes of the traffic department) shall, in respect of the liability of the parties using said line, to each other or to third persons, growing out of the fault or neglect of such servants or employes, be deemed and held to be the sole servants of the party to or upon or in connection with whose train or property any loss or damage may have occurred."

HELM, BRUCE & HELM FOR APPELLANT.

1. Contracts will be construed so as to carry out the intention of the parties nothwithstanding such construction might be a de-

192        KENTUCKY REPORTS.        [Vol. 107

Louisville & Nashville R. R. Co. v. Chesapeake & Ohio Ry. Co., &c.

parture from the strict letter. Shultz & Co. v. Johnson's Admr., 5 B. M., 499; Thompson v. Thompson, 2 B. M., 166; White v. Booker, 4 Met., 268.

2. Losses 'from injuries to employes engaged in the work of maintenance are a part of the cost of maintenance. Elliott on Railroads, vol. 2, sec. 80; M. & O. R. Co. v. Davis, 66 Miss., 277; Smith v. Eastern R. Co., 124 Mass., 154; Cowdrey v. Galveston H. & H. R. Co., 93 U. S., 352; Kline v. Jewett, 26 N. J. E., 481.

HUMPHREY & DAVIE FOR APPELLEE.

The loss complained of was covered by section four of the contract between the parties and not by section seven. Injuries to persons are not cost of maintenance. N. Y. Sec. & Tr. Co. v. L., E. & St. L. Co., 79 Fed. Rep., 388.

CHIEF JUSTICE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

In March, 1895, the Chesapeake & Ohio Railway Company and the Elizabethtown, Lexington & Big Sandy Railroad Company, desiring, as recited in the preamble to the contract to be considered presently, "to use, in common with the first party [Louisville and Nashville Railroad Company], that part of the railway" of the first party that would be situated between Louisville, Ky., and Lexington, Ky., after construction of what is known as the "Shelbyville Cut-Off," entered into a contract by which, for a certain cash consideration per month, and other mutual covenants, the second parties obtained the right to such joint use for a term of 100 years, beginning on January 1, 1896.

In this contract there are sundry provisions defining the liabilities of the contracting parties as between themselves and to third parties, the question now before us being one respecting payment of a claim for damages to a third party under the following circumstances: It appears that in October, 1896, Hugh Stucker, an employe of the Louisville & Nashville, and a member of

Vol. 107]          SEPTEMBER TERM, 1899.          193 ·

Louisville & Nashville R. R. Co. v. Chesapeake & Ohio Ry. Co., &c.

a crew of workmen engaged in maintaining and repairing and working on a portion of the roadbed and track in the joint use of two railroads, was killed by falling or being thrown from a hand car owned by the Louisville & Nashville, but at the time being used in the work of maintaining and repairing the roadbed. After suit for damages had been brought against the Louisville & Nashville by Stucker's administratrix, and certain proof taken, the claim for damages was adjusted upon the advice of counsel, and the sum of $3,000 paid by the Louisville & Nashville to Stucker's administratrix.

Thereupon this action was brought by the appellant (Louisville & Nashville) against the appellee (Chesapeake & Ohio) for a proportionate share of this loss, it being its contention that it was a loss chargeable, under the contract, to the cost of maintenance of the road, and which was payable on a wheelage basis by both roads. The trial court held otherwise; hence this appeal.

The first section of the contract provides for the use in common of the road from Louisville to Lexington, and for the construction of what was known as the "Shelbyville Cut-off." The second provides that the maintenance of the railway thus used jointly, and all improvements or additions which might be added under the terms of the contract, should be conducted under the charge and supervision of the first party, and the same should be kept and maintained in a good and safe condition.

The third, that the engines and cars of the second parties should be managed by the employes of the second parties, subject, however, to the reasonable rules and directions of the officers of the operating department of the first party. Time tables were to be arranged by the joint action of the superintendents or other officers of all parties.

[13]

194        KENTUCKY REPORTS.        [Vol. 107

Louisville & Nashville R. R. Co. v. Chesapeake & Ohio Ry. Co., &c.

The fourth section is as follows:

"Agents, telegraph operators, train dispatchers, section foremen, laborers, watchmen, switchmen, or any other persons employed in the maintenance or care of, or operation of, the property jointly used (not including station agents, except when acting as regular telegraph operators, nor employes of the traffic department), shall, in respect of the liability of the parties using said line, to each other or to third persons, growing out of the fault or neglect of such servants or employes, be deemed and held to be the sole servants of the party to, upon or in connection with whose train or property any loss or damage may have occurred."

Then follows, as part of this section a clause authorizing second parties to demand the removal from service of any of the persons employed in the care or operation of the property jointly used; and, further, that, should damage to person or property result from the negligence of second parties, the latter would save the first party harmless, and, if such damage result from the negligence of the first party, the latter would hold the second parties harmless against such damage; and, should damages result from their joint negligence, it was to be equally borne. In case of disagreement as to whose train or property was at fault or as to the amount of damages, then the questions were to go to arbitrators.

The fifth section provides, in effect, that all local business shall belong to the first party, but if, at given points, it is transacted by second parties, they are to pay seventy-five per cent. thereof to the first party.

The sixth recites that the second parties accept the grant of the right to jointly use the road in question

for the term agreed on, and covenant to pay for such joint use a rental of five thousand dollars ($5,000) per month. In this section it is provided that, should additional tracks, bridges, structures, or improvements be added in the future to meet the joint needs of the parties, the second parties should pay to the first party one-half of the interest, at six per cent. per annum, on the value of such additional tracks, etc., if they desired to use them; otherwise, they need not so pay. But there was to be no extraordinary outlay in the replacement of existing tracks, bridges, or structures, etc., unless by consent of second parties.

The second parties were also given the right to demand an increase of facilities, if necessary to the prompt dispatch of business.

The seventh section reads as follows:

"In addition to the fixed rentals or interest moneys and other payments to be paid as hereinafter provided, the second parties agree to pay such proportion of the cost of maintenance, repairs, renewals, and improvements of that part of the road jointly used, and such proportion of the wages of telegraph operators and other employes and officers in the joint service of the two parties, under this contract, as the number of engines and car miles of the parties of the second part run over said railway bears to the total number of engines and car miles run over said railway; it being understood and agreed that no charge shall be made for services of general and accounting officers of the first party, except for such as are actually employed in conducting the business of this particular part of the lines of the party of the first part."

In this section it is further provided that second parties were to pay a like proportionate share of all taxes

and public rates assessed on the railway jointly used, and these costs and expenses of maintenance, etc., were to be paid each month.

The eighth section makes certain provisions with respect to what may be done in default of prompt payment of the sums named by second parties and other matters not involved here.

The provisions of the ninth, tenth, eleventh, and twelfth sections are in no way pertinent here, and the thirteenth and last section merely provides that the contract shall take effect on the 1st day of January, 1896, and continue in effect for one hundred years from that date.

For all practical purposes, this contract may be regarded as one by which the Louisville & Nashville Company sold to the second parties a joint interest in its roadway from Lexington to Louisville, by the Shelbyville route; the latter paying, in lieu of a purchase price, a rental equal to one-half of the interest at six per cent. per annum on the value of the entire track, bridges, structures, etc. This is, indeed, the precise plan adopted to fix the rental of such additional tracks, bridges, structures, or improvements as might be necessary for the joint use of the contracting parties. But, whether we look at the transaction in this way or not, the second parties did become the joint owners of the use of the road for the term of one hundred years; and, assuming an equal use, they agreed to pay monthly one-half of all the cost and expenses of maintenance, repairs, renewals, and improvements of the road in common use, and one-half the wages of the "telegraph operators, and other employes and officers, in the joint service of the two parties under this contract."

While, therefore, the first party employed primarily the officers, operators, and other employes

in this joint service, yet their agents were the joint agents and employes of the contracting parties, and were engaged in their joint service, in the maintenance, care of, and operation of their common property and business. And so, while the first party must maintain the road in a safe condition, the cost of such maintenance, repairs, etc., was chargeable to joint account. The only property not sold or let to the joint use and occupancy of the second parties under the scheme of this contract was that at the terminals of the line and the trains and cars in the exclusive use of the first party in the operation of its trains; and the only agents and servants exclusively the agents and servants of either party to the contract were those engaged in the operation of the trains and cars belonging distinctly to the one or the other party. Practically everything connected with the line, from one end of it to the other, was regarded as held, owned and managed in common, except the trains and property of either party used in running and operating the road.

This being the situation, it became important to fix, by some easily applied test, whose *sole* agent or servant was an agent or servant in the common service to be considered when his negligence caused loss or damage. So it was provided that agents and employes engaged in the joint service of the contracting parties were, in respect of the liability of the parties using the line to each other or to third persons, growing out of the fault or neglect of such servants or employes, to be deemed and held to be the sole servants of the party to or upon or in connection with whose train or property any loss or damage may have occurred.

The words "train or property" are the vital words of this section, and we are convinced they refer to trains

and property belonging exclusively to, and in the exclusive use of, the one or the other party, whilst "using the line;" that is, whilst operating the line.

We do not think the question of whose sole servant any employe engaged in the common service should be, was to be, and could be, settled by reference to any train or property in the joint use or service, and practically under the joint control and ownership of both contracting parties. The first party ran and operated its own trains and locomotives, and by its own employes; and when a joint employe along the line was negligent, and a loss occurred thereby, in connection with such train or locomotive, the joint employe was to be regarded as the sole servant of the first party. So, if the negligent joint employe caused a loss in connection with the train or property of the second party, then the employe was to be regarded as the sole servant of the second party.

The words "train or property" were used alike with reference to the first and to the second party, as fixing *when* the one and *when* the other would be liable.

The clause contemplates that at one time the first party, and at another time the second party, might be liable; and in either case it was because the "train or property" of the one or the other was the "train or property" in connection with which the loss occurred. The words are alike, and equally applicable to both parties. The only exclusive property, however, the second party had, were the trains and locomotives it used on the road. The only application, therefore, to be made of the words, in fixing the liability of the second party, is to apply them to its trains and locomotives, or, at any rate, to its property used in operating its trains. We must make the same

use of the words when we apply them to the first party.
They refer, therefore, to the trains, locomotives, and property belonging exclusively to the first party, and used in
operating its trains, and they do not refer to any property
in the joint use of both parties, or any property not used
in the operation of trains and locomotives.

When all cost of maintenance, which we shall see covers
losses from injuries to workmen engaged in repairing the
road, is chargeable to joint account under the contract,
we can perceive no reason why a particular item of such
cost should be singled out and charged to the first party
alone.    The language of the contract does not demand it,
and the scheme provided repels such a construction.

There is a mutuality in advantages and liabilities observed in the contract between these joint owners, and
the construction we have adopted is in accord with this
scheme of the contracting parties.

If a crew in charge of a hand car, whilst engaged in repairing the road, and therefore in the joint service of both
parties, negligently cause damages and loss in connection with a train of the first party, the loss is that of the
first party; but, if in connection with a train of the second party, the loss is that of the second party.    But if
the crew, the joint servants of both, while engaged in the
maintenance and repair, derail the hand car, and cause
loss or damage to person or property, the loss is chargeable to the cost of maintenance.

The law is well settled that losses from injuries to employes engaged in the work of maintenance are a part of
the cost of maintenance, and this is not seriously questioned.    2 Elliott on Railroads, p. 818; Smith v. E. Railroad Co., 124 Mass., 154; Cowdrey v. Galveston, &c., Railroad Co., 93 U. S., 352.

The loss in this case is adjustable on the basis fixed in section seventh of the contract.

The judgment is reversed for proceedings consistent herewith.