111 729
e112 211

CASE 80—ACTION TO RECOVER DAMAGES FOR THE DEATH OF PLAINTIFF'S INTESTATE—Oct. 11.

# Louisville & N. R. R. Co. v. Breeden's Adm'x.

APPEAL FROM FRANKLIN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

RAILROADS—DANGEROUS CROSSING—FAILURE TO REMOVE OBSTRUCTIONS TO VIEW—INCREASED CARE REQUIRED—LIABILITY OF LESSOR FOR NEGLIGENCE OF LESSEE.

Held: 1. Obstructions on a railroad right of way which interfere with the view of the traveler on the highway, so as to endanger life, are improper if, by the exercise of ordinary care, they may be removed; but the failure to remove cuts is not negligence, though the railroad was built after the highway was established.

2. Where plaintiff complained of obstructions to the view of a railroad crossing, the principal one of which was a cut, the court should have instructed the jury that defendant was not responsible for that obstruction, and that if, by reason thereof, the crossing was especially dangerous, both the railroad company and the traveler on the highway were required to exercise increased care in proportion to the danger.

3. By a contract between two railroad companies, the L. & N. and C. & O., they were to jointly maintain the roadbed owned by the L. & N., and the engines and cars of the C. & O., though managed by its employes, were subject to the direction of the officers of the operating department of the L. & N., and the tickets sold by the agents of that company were good on the trains of the C. & O., which was to receive one-fourth of such fares. Besides paying its part of the cost of maintenance and taxes, the C. & O. was to pay also a monthly rental. Held, that the contract was not a lease, but a joint-traffic arrangement; and the C. & O. trains must be regarded as run by both companies on joint account, and therefore both companies are liable for negligence in the operation of such trains.

4. A railroad corporation leasing its road without direct legislative authority is responsible for the torts of its lessee, though it surrenders complete control of the leased road.

IRA JULIAN, FOR APPELLANT.

Rasmus Breeden was killed by a Chesapeake & Ohio Railway train at a public crossing in Woodford county on the track of the L. & N. R. R. Co., while the same was being used by the C. & O. under a traffic arrangement between said two companies set out in full in this record.

POINTS AND AUTHORITIES.

(1) The peremptory instruction asked for should have been given. L. & N. R. R. Co. v. C. & O. Ry. Co., 21 Ky. Law Rep., 875; Roth v. C. & O. Ry. Co., Judge Barr's Opinion; Robinson v. Webb, 11 Bush, 464; Arrowsmith v. N. & D. R. R. Co., 57 Fed. R., 166; Wood on Landlord & Tenant, sec. 539; Hayne v. N. P. R. R. Co., 74 Fed. R, 280. (2) The court erred as to the instructions granted and refused. Shearman & Redfield on Negligence, sec. 26; Sutherland on Damages, vol. 1, pp. 18 to 73. (3) The court erred in refusing the instructions asked for as to contributory negligence. Beach on Contributory Negligence, 3d edition, secs. 181-184. (4) The court erred in curtailing the evidence as to blowing the whistle. McPhillips v.

Louisville & N. R. R. Co. v. Breeden's Adm'x.

Livesey, 11 Ky. Law Rep., 898; Cash v. Miller, 2 Bush, 568; Com. v. Messmore, 5 Ky. Law Rep., 611. (5) Error as to an unauthorized closing argument of counsel for plaintiff.

EDWARD W. HINES, FOR APPELLANT.

### POINTS AND CITATIONS.

(1) There was no evidence tending to show that the condition of the crossing was due to any negligence on the part of defendant, or that it was the proximate cause of the collision. (2) As the injury may have come from either one of two causes, either of which may have been the, *sole* proximate cause, it devolved on plaintiff to show by a preponderance of the evidence that the cause for which defendant was liable was *the* proximate cause. Hughes v. Cincinnati, &c., R. Co., 91 Ky., 526; Wintuska's Adm'r v. L. & N. R. Co., 14 Rep., 579; Louisville Gas Co. v. Kaufman, Straus, & Co., 20 Rep., 1069. (3) The instructions were contradictory, confused and misleading, and for that reason there should be a reversal. (4) If the servants in charge of the C. & O. train could, by the exercise of reasonable care have avoided the injury, the failure on their part to exercise such care was the proximate cause of the injury, and the court should have so instructed the jury. Shields, &c., v. L. & N. R. Co., 97 Ky., 103. (5) The L. & N. is not liable for the negligence of the servants in charge of the C. & O. train. L. & N. R. R. Co., v. C. & O. R. R. Co., &c., 21 Rep., 875; Harper, &c., v. Newport News & M. V. Co., 90 Ky., 359.

B. G. WILLIAMS, FOR APPELLEE.

### POINTS AND AUTHORITIES CITED.

(1) As to sufficiency of pleading in setting up authority of C. & O. and L. & N. to make contract. Root v. Merriwether, 8 Bush, 397; Templeton v. Sharp, 10 Ky. Law Rep., 502. (2) L. & N. being owner, is liable. Woods' Railroad Law, Ed., 1899, vol. 3, p. 1688, sec. 490; Elliott on Railroads, vol. 2, p. 614, sec. 477; Railroad v. Brown, 17 Wallace, 445; O. & M. R. R. Co. v. Dunbar, 20 Ill., 623; Chicago & Rock Island v. Whipple, 22 Ill., 109; 2d Williams, (Vt.) 304; Aycock v. Raleigh, &c., Air Line, 89 N. C., 330; Macon & Augusta R. R. Co. v. Moses Mays, 49 Ga., 355; Peoria & Rock Island v. Sylvia Lane, Admrx., 83 Ill., 448; Railroad Company v. Barren, 5 Wallace, 90; Abbott, Admrx. v. Johnston, &c., 80 N. Y., 27; Elliott on Railroads, vol. 2, p. 607, sec. 470. (3) Joint Tort Feasors all Liable. Pugh v. C. & O., 19 Ky. Law

Rep., Cuddy v. Horn, 46 Mich., 603; Colgrove New York, &c., 20 N. Y., 492; Barrett v. Third Ave. R. R. Co. 45 N. Y., 628; Flaherty v. Minneapolis, &c., 39 Minn., 328; Bunting v. Hogsett, 139 Pa. St., 376; Grand Trunk R. R., v. Cummings, 160 U. S., 702; Brown v. Coxe Bros. & Co., 75 F. R., 689; Bishop on Non-contract Law, sec. 518; Wharton's Law of Negligence, sec., 395. (4) Negligence not imputed. Cahill v. Cin. New O. & Texas Pacific, 13 Ky. Law Rep., 714. (5) Curtailing number of Witnesses. 9 Ky. Law Rep., 105; 14 Ky. Law Rep., 800.

T. J. Jett testified that the turnpike was a public county road at time the railroad was constructed across it. That being true, the original construction of this crossing as it was constructed and maintained was negligent. The L. & N. offered no witness to contradict Jett on this subject, although the facts were peculiarly within knowledge of appellant.

The L. & N. having constructed its crossing over the county road at grade, the obligation was upon it to keep its hedges, fences and embankments in its right of way in such condition as that a person using reasonable care for his own safety, could use the crossing with reasonable safety. For this failure which L. & N. does not deny, how could it escape liability?

### POINTS AND CITATIONS—ADDITIONAL.

(1) The only instructions offered by defendant which were not given by the court, were numbers 5 and 7. Read them and you will find, that number 5 is covered so far as proper by the court's instruction, number 8 and number 7 is covered by number 2, offered by plaintiff and given. (2) If an accident occurs from two causes due to the negligence of different persons, both together the efficient cause, then all whose acts contributed to the accident are liable for the injury resulting and the negligence of one, furnishes no excuse for the negligence of the other. Gulf Coast, & S. F. R. Co, v. McWhirter, 77 Texas, 360. (3) Concurring negligence is no defence. It is not legally possible that one negligent person may escape liability because the negligence of another concurred in producing the injury. Webster v. Hudson River Co., 38 N. Y., 260; Louisville N. A. & C. R. Co. v. Lucas, 6 L. R. A., 193; Miller v. St. Louis J. M. & S. R. Co., 7 W. Rep., 122; Brown v. Wabash St, L. P. R. Co., 2 West Rep., 560; Johnson v. Northwestern Telephone Exchange Co., (Minn.) Feb. 15, 1892; Lake v. Milliken, 62 Me., 243. (4) The jury passed on the facts as to the negligence of the L. & N.

Louisville & N. R. R. Co. v. Breeden's Adm'x.

in regard to the condition of the crossing. That matter was properly within their province and should not be disturbed, unless their finding was flagrantly against the evidence. L. & N. v. Clark's Admr., L. R., 1375. (5) The L. & N. has not obtained the prescriptive right to maintain the crossing and its approaches as they are.

The proof shows, that the embankment, hedges, fences, trees, and the nearness of the cut to the crossing make it a death-trap, a public nuisance; no length of continuance entitles them to maintain it.    North Point Consol. Irrigation Co. v. Utah & S. L. Canal Co., 246.   (6) By the terms of the contract itself the parties to it, realizinng that the L. & N. is liable for negligence of C. & O. provide that L. & N. shall have the right to recover from C. & O. whatever it is required to pay on account of C. & O.'s negligence.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

On February 24, 1899, Rasmus Breeden, appellee's intestate, was killed by collision with a train of the Chesapeake and Ohio Railway Company at a public crossing near Ducker's, in Woodford county, on the track of the appellant, the Louisville & Nashville Railroad Company, and this action was brought to recover damages for his death.    There was a verdict and judgment in favor of the plaintiff for $5,000, and the defendant appeals.

The proof shows that the intestate and another man were riding in a buggy on the turnpike, leading a horse behind the buggy.    The pike crossed the railroad at an acute angle.    The view of the track to the east was obstructed until they got substantially to it.    It was a cold morning and there was some snow on the ground. The railroad approached the crossing in a curve, through a cut, and the train could not be seen by the traveler on the pike until it rounded the curve, which was between 200 and 300 feet from the crossing.    Just as the buggy reached the track, it was struck by the train, hurling the occupants something like a hundred feet, and killing them

both.    The proof on behalf of the plaintiff tended to show
that by reason of the obstruction the sound of trains ap-
proaching the crossing was deadened, and that the view
was obstructed by not only a hedge on the turnpike and
some buildings and trees standing on it, but also by a
hedge and fence running along the railroad and about 18
or 19 feet from the track.    The hedge along the railroad
had been trimmed shortly before the collision, and, it
would seem, in its condition at that time was not a serious
obstruction.    But the crossing was exceptionally dan-
gerous for both sight and hearing were obstructed.    The
train was running, perhaps, 35 or 40 miles an hour, and,
according to the proof made by the plaintiff from a num-
ber of persons who were eye witnesses and near by, gave
no signal at all of its approach, until it was near the
mouth of the cut, when the whistle was blown and the
air brakes applied with much force, but too late to pre-
vent the collision.    The train was not on time, and the
proof is conflicting as to how much it was late.    The
proof for the defendant was that the signals of the ap-
proaching train were given, and that those in charge of
the train did not see the persons on the crossing or the
buggy in which they were riding until they got within 50
yards of them.    The evidence showed that the railroad
was built about the year 1835, and was then run as a horse
line.    The county road, on which the turnpike was after-
wards built, was in existence when the railroad was lo-
cated.    The court instructed the jury among other things,
as follows:    "(1) If the jury believe from the evidence
that the crossing and immediate approaches on defend-
ant's right of way, about one mile west of Ducker's Sta-
tion, in Woodford county, Ky., where said Breeden was
killed, was at the time by reason of negligence and care-

lessness of the defendant, Louisville & Nashville Railroad Company, in a dangerous and unsafe condition, by reason of fences and other obstructions on the defendant's right of way, at and immediately contiguous to, and in close proximity to said crossing, so as to imperil the lives of travelers on said highway who were using ordinary care for their own safety, and that the defendant, Louisville & Nashville Railroad Company, knew, or, by the exercise of ordinary care, could have known of its dangerous and unsafe condition, and that Rasmus Breeden, while using ordinary care for his own safety in attempting to cross said railway, was struck and killed by an engine and train of cars running on said track under contract with the said Louisville & Nashville Railroad Company, then said Louisville & Nashville Railroad Company is liable; and the jury ought to find for the plaintiff such sum in damages as they may believe will reasonably compensate the estate of Rasmus Breeden for the loss, by the destruction of his life, of his power to earn money, not to exceed $25,000, the amount claimed in the petition. But, before the jury can find for the plaintiff, they must believe from the evidence that the dangerous condition of the crossing and its immediate approaches was the proximate cause of the injury. (2) If the jury believe from the evidence that the crossing at which Rasmus Breeden lost his life was formed by the Louisville & Nashville Railroad Company building its railroad track across the county road where the turnpike now runs, and if the jury believe that at said time said road was a public county road, then it was the duty of said railroad company to so construct its crossing, and its immediate approaches, in such manner as to enable a reasonably prudent man, exercising ordinary care, to cross same with reasonable safety; and, if the jury be-

lieve that the said crossing and its immediate approaches
were so unsafe as to imperil the lives of persons travel-
ing said road, and who were using ordinary care, on ac-
count of the condition of the crossing and its approaches,
or on account of hedges, fences, and other obstructions
on its right of way, which prevented the decedent from
seeing or hearing the approach of the train while in the
exercise of his senses of sight and hearing, then the jury
ought to find for the plaintiff as defined in instruction No.
1. But if the jury believe from the evidence that the
said county road where the turnpike now runs was located
after the time of the building of the railway, then it was
the duty of the authorities locating and building said road
over said railway to have avoided the dangers, if any, to
the traveling public, by reason of said embankment or
other obstructions on defendant's right of way, and the
defendant is not liable therefor. This exemption, how-
ever, does not relieve the said defendant of the duty of
keeping its immediate crossing and its approaches there-
to, on its right of way in reasonably safe condition for
travelers to pass over said railway; and, if the jury be-
lieve that the said crossing and the immediate approaches
to same were in reasonably safe condition at the time of
the accident, and said railway was constructed prior to
the time of the construction of said county road, the de-
fendant is not liable, and the jury ought to so find. (3)
The jury are instructed that the defendant, the Louisville
& Nashville Railroad Company, is not responsible for
any injury which may result solely from the operation
of the Chesapeake and Ohio trains over the railroad in
question; and that, if they believe from the evidence that
the injury and death of plaintiff's intestate was directly
and proximately caused by the mode in which the Chesa-

peake & Ohio train which struck him was being run, or by the failure of those in charge of said train to give reasonable and timely signal or warning of its approach, then they ought to find for defendant.    (4) If the jury find from the evidence that, considering the nature and condition of the crossing in question, and its surroundings, those in charge of the train which killed Breeden gave such signal or warning of its approach as was reasonably sufficient to apprise thereof a traveler in the vicinity of the crossing, who was himself in the exercise of ordinary care and prudence, they should find for defendant. (5) Although the jury may believe from the evidence that the crossing where Breeden was killed was a dangerous crossing on account of the cut and turnpike surroundings, yet, if they further believe that the collision and killing could have and would have been avoided by the exercise of reasonable care and proper precaution on the part of the employes of the Chesapeake & Ohio Railway Company in the operation of the train of cars that struck the buggy and killed Breeden, then they should find for the defendant, unless they shall further believe from the evidence that the Louisville & Nashville Railroad Company were negligent and careless in the construction of said crossing and its approaches, or by permitting obstructions on its right of way, and which negligence and carelessness was the direct and proximate cause of the accident; in which case they ought to find for the plaintiff."

The rule as to the liability of the railroad company for allowing obstructions to the sight and hearing of the traveler to exist near highway crossings is thus stated in 2 Thomp. Neg. sec. 1507: "The true view seems to be that the railway company ought not to be held blameworthy for not re-

moving such obstructions to sight and hearing as may be
reasonably necessary to the exercise of its franchises,—
such as necessary buildings on its right of way, or the
necessary standing of cars upon its side tracks near the
crossings of public streets or roads; but that to allow
obstructions to vision and hearing of a traveler to come or
to remain upon its right of way, which are not necessary
to the exercise of its franchises, which can be removed at
no great expense,—such as weeds, bushes, hedges, trees,
embankments and the like,—is negligence as matter of law.
But it can not be affirmed with entire confidence that such
is the law." After taking up and discussing a number
of cases he concludes the subject with these words:
"From the foregoing decisions we may extract the conclu-
sion that for a railway company unnecessarily and negli-
gently to permit obstructions to accumulate or remain
upon its right of way, so as to obstruct the view of a
traveler approaching its track at a public crossing, is neg-
ligence which will make the company liable for an injury
to the traveler caused by a collision with its train, which
would have been averted had the view been unobstructed,
provided the traveler is free from contributory negligence."
The railroad company is required in the exercises of its
franchises to use such care for the safety of others as the
circumstances demand for the security of life; that is, such
care as may be reasonably expected of a person of ordin-
ary prudence in its situation. Obstructions to the view
of the traveler on the highway endangering life, which,
by the exercise of ordinary care should not be suffered to
remain, are improper, and where, by reason of them, an
injury results, the company may be held responsible. Rail-
road Co. v. Clark's Adm'r 105 Ky., 571 (20 R. 1375) (49 S. W,.
323). But cuts are necessary on all railroads. The cut through

which the train passed just before reaching the crossing
in question was 23 or 25 feet deep, and the obstruction
from the cut was, according to the testimony of the wit-
nesses, the most serious, if not the real trouble. The
railroad company was not required to remove an obstruc-
tion of this character. Obstructions from the conforma-
tion of the earth's surface are unavoidable, and the rule
as to them is not affected by the fact that the railroad
was built after the highway was established. The Legisla-
ture authorized the construction of the railroad, and, in
the determination of its liability for obstructions of view,
it is wholly immaterial which was established first, the
railroad or the higway.

The second and fifth instructions, taken together, au-
thorized the jury to find for the plaintiff if the crossing
was a dangerous one on account of the cut, and should not
have been given. In lieu of these instructions, the court
should have told the jury that the defendant was not re-
sponsible for obstruction of view from the cut, and that if,
by reason of such obstruction of view, the crossing was
especially dangerous, then those in charge of the railroad
and those traveling on the highway were both required to
exercise increased care in proportion to the danger in the
use of the crossing. Railway Co. v. Gunter (21 R. 1803)
56 S. W., 527; Railroad Co. v. Cummins' Adm'r (23 R. 681)
63 S. W., 594.

As the case must be tried again, it becomes necessary
to determine whether appellant is responsible for the fail-
ure of those in charge of the train to give timely warning
of its approach. The railroad was the property of the
appellant and was in its possession. By an arrangement
with the Chesapeake & Ohio Railway Company that com-
pany also ran its trains over it. The written contract

between the two companies under which this was done, so far as material to this question, is as follows: "This agreement made this 23d day of March, A. D., 1895, between the Louisville & Nashville Railroad company, first party, and the Elizabethtown, Lexington & Big Sandy Railroad Company and Chesapeake & Ohio Railway Company, jointly and severally, second parties, witnesseth: First. The first party, in consideration of the premises and of the agreements herein contained, and on the part of the second party to be performed, agrees to construct, by the first of January, 1896, a substantial railway connecting its present line at some point between Christiansburg and Benson with its line at Shelbyville, and by so doing reduce the length of the railway from First Street Station, Louisville, to the western terminus of the Elizabethtown, Lexington & Big Sandy Railroad in Lexington, to not more than eighty-four (84) miles; and hereby grants to the second parties, jointly and severally, the right to use, jointly with the first party, its line of railway as will then exist from Louisville, through Shelbyville and Frankfort, in and through the counties of Jefferson, Shelby, Franklin, Woodford, Scott, and Fayette, to a connection with the western terminus of said Elizabethtown, Lexington & Big Sandy Railroad, in Lexington, Ky., including the use of sidings and switches, water stations, real estate, and all other property incident and necessary to the use of the same, for the purpose of running passenger and freight trains of the second parties to and from points on their line from and to Louisville and points beyond via Louisville. But nothing herein contained shall be construed to give the second parties any right to use the terminal buildings, shops, structures, and side tracks of the first party in the cities of Louisville or Lexington.

The parties of the first part may make and maintain all necessary connections to get off and on said line of the party of the first part at Louisville and Lexington; the connection at Louisville to be at a point adjacent to the tracks of the Louisville & Jeffersonville Bridge Co. Second. The maintenance of that portion of the railway of the first party jointly used under this agreement, and all improvements or additions which may be added under the provisions of this agreement, shall be conducted under the charge and supervision of the first party, and the same shall be kept and maintained in a good and safe condition. Third. The engines and cars of the second parties while on the railway of the first party, shall be managed by the employes of the second parties subject, however, to the reasonable rules and to the directions of the officers of the operating department of the first party. Time-tables for the movement of trains over the railways affected by this agreement shall be arranged by joint action of the superintendents or other officers of the parties hereto. Trains of either party shall have the right of way over all trains of either party of an inferior class. Fourth. Agents, telegraph operators, train dispatchers, section foremen, laborers, watchmen, switchmen, or any other persons employed in the maintenance or care of or operation of the property jointly used (not including station agents, except when acting as regular telegraph operators, nor employes of the traffic department) shall, in respect of the liability of the parties using said line, to each other or to third persons, growing out of the fault or neglect of such servants or employes, be deemed and held to be the sole servants of the party to or upon or in connection with whose train or property any loss or damage may have

occurred. But it is mutually understood and agreed that any or all such persons, or any other persons employed in the care or operation of the property jointly used, shall be removed from such service upon the demand of the general manager or other general officer of the parties of the second part or either of them. Should any damage to persons or property result from any negligence of the second parties, or either of them, their or its officers or servants, they agree to hold the other party harmless against all such damages; and, should the first party be sued and judgment rendered against it for such damages, the second parties jointly and severally, bind themselves to pay the same, with all costs incident thereto, or to refund the same and costs, should the first party have already paid such damages and costs. Should any damages to persons or property result from any negligence of the first party, its officers or servants, it agrees to hold the second parties harmless against all such damages; and, should the second parties be sued and judgment rendered against them for such damages, the first party binds itself to pay the same, with all the costs incident thereto, or to refund the same and costs should the second parties or either of them have already paid such damages and costs. Should any damages result from the joint negligence of the parties hereto, or of their servants, the damages shall be equally borne as between themselves by the parties hereto. In case the parties can not agree as to whose train or employes was or were at fault, or as to the amount of damage done, the question or questions shall be referred to arbitration in the manner hereinafter provided, and each party shall abide by and perform the awards and comply with the decisions of such arbitrators, which decision shall terminate the controversy. Fifth. All business originating upon

the line between Louisville and Lexington, not including business from either of said points to the other, shall belong exclusively to the first party, but the second parties shall have the right to honor upon their trains passage tickets of first party for passengers to Frankfort and Shelbyville, and also any other points at which the trains of the second parties may be obliged to stop on account of railroad crossings, train orders, water, etc.; all of which tickets so honored shall, as soon as may be after the end of each month, be returned by the second parties to the first party, and the first party shall thereupon pay the second parties twenty-five (25) per cent. of the value of such tickets; and, in the event of conductors of second parties collecting cash fares to such points on the line used jointly (exclusive always of through fares from Louisville to Lexington and *vice versa*, said second parties shall, in like manner, at the end of each month, report such cash fare collections to first party, and remit to it seventy-five (75) per cent. thereof.    The parties of the second part, on their regular through trains, may carry passengers to and from local points on the joint track, if such passengers be destined from or to their own lines, and on all such passengers they shall likewise pay the party of the first part seventy-five (75) per cent. of the local fare.    Sixth.    The second parties hereby accept the foregoing grant of the right to jointly use the railway hereinbefore described of the first party, upon the terms above named, and agree to continue in such joint use during the period hereinafter stated.    And the second parties hereby covenant and agree, for the right to the joint use of the said line of railway of the first party, to pay to said first party, its successors or assigns, a rental of five thousand dollars ($5,-000.00) per month.    Seventh.    In addition to the fixed

rentals or interest moneys and other payments to be paid
as hereinbefore provided.    The second parties agree to
pay such proportion of the cost of maintenance, repairs, re-
newals, and improvements of that part of the road jointly
used, and such proportion of the wages of telegraph op-
erators and other employes and officers in the joint ser-
vice of the two parties under this contract, as the num-
ber of engines and car miles of the parties of the second
part run over said railway bears to the total number of en-
gines and car miles run over said railway, it being under-
stood and agreed that no charge shall be made for services
of general or accounting officers of the party of the first
part, except for such as are actually employed in conduct-
ing the business of this particular part of the line of the
party of the first part.    The said second parties also
agree, as part payment for their said use of said line of
railway and facilities, to pay to the said first party their
like proportionate share of all taxes and public rates as-
sessed on such portion of first party's said line of rail-
way, such share of said taxes and public rates to be based
upon the car and engine mileage, as hereinbefore provided
in regard to maintenance," etc.    "Thirteenth.   This con-
tract shall take effect on the first day of January, 1896,
and continue in effect for one hundred years from said
date."

The case of Louisville & N. R. Co. v. Chesapeake & O.
Ry. Co. 107 Ky. 191 (21 R. 875) (53 S. W., 277), is relied on
for appellee to sustain the ruling of the court below. In that
case an employe of the Louisville & Nashville Railroad en-
gaged in the maintenance of the road was injured, the L. &
N. Railroad paid the loss, and sued the Chesapeake
& Ohio to recover its share of the loss.   The court
determined that the Chesapeake & Ohio was liable to the

Louisville & Nashville, as the loss was part of the expense incidental to the maintenance of the road. This is all that was determined in that case. On the other hand, in the case of Railway Co. v. Osborne, 97 Ky., 112 (16 R. 815) 30 S. W., 21, 53 Am. St. Rep., 407, the company had let another have a train and train hands for the purpose of running an excursion train, from which Osborne was ejected. The company was held liable. The court said: "Public policy and the law alike forbid that a railway company shall be allowed to place its road, train hands, and cars in the hands of or under the control of a stranger for such purpose as is claimed in this action, and thus evade liability for the wrongs done by such person." It is urged for appellant that it is conceded by the pleadings that it had legislative authority to lease its road, and so it was properly held not liable for the wrongs of its lessee. Harper v. Railroad Co., 90 Ky., 359 (12 R. 333) (14 S.W., 346); 5 Thomp. Corp., section 6293. But this case does not come within these authorities. The Louisville & Nashville Railroad Company did not relinquish to the Chesapeake & Ohio Company the possession or control of the railroad. The contract above quoted is nothing more than a traffic arrangement. The two companies jointly maintained the roadbed. The engines and cars of the Chesapeake & Ohio Railway Company, though managed by its employes, were subject to the directions of the officers of the operating department of the appellant. The tickets of appellant sold by its agents were good on the Chesapeake & Ohio trains; that is, appellant, instead of carrying these passengers on its own train, had them carried on the Chesapeake & Ohio trains, and one-fourth of the collections for these fares went to the Chesapeake & Ohio, and three-fourths to the Louisville & Nashville. Besides paying its part of the cost of main-

tenance of the road and taxes, the Chesapeake & Ohio paid
also a rental of $5,000 a month. Under such circumstances,
the Chesapeake & Ohio trains must be regarded as run
by both the companies on joint account; and both com-
panies are liable for the negligence of those in charge of
the trains to third persons, whatever their rights may be
as to each other. Caruthers v. Railroad Co. (Kan.)
44 L. R. A., 737, and notes, pages 746, 750 (s. c. 54 Pac.,
673). In Elliott, R. R., section 470, the rule is thus stated:
"Where the lessor company, in an authorized lease, retains
the control of the road, there is reason for holding it liable
for the negligence of the lessee in operating the road. The
fact that exclusive control is not transferred to the lessee
is an influential factor, and may well be held to constitute
the basis of an exception to what we conceive to be the gen-
eral rule." In 2 Thomp. Neg., section 1956, after showing
when one company might not be liable for the torts of the
other, the learned author adds: "But where there is an
arrangement among different railway companies whereby
trains are to be run over one road in the interest of all,
each contributing to the expense and having such a share
in the profits as may be determined by a common agent
according to a rule agreed upon among them, the occupa-
tion and operation of the road are deemed to be joint, in
such sense as to render each or all of the companies lia-
ble for an injury inflicted upon a third person by the neg-
ligence of the persons operating any of the trains."

We are therefore of opinion that the court erred in in-
structing the jury that appellant was not liable for the
negligence of those in charge of the train if they failed
to give proper notice of its approach to the crossing.

Judgment reversed, and cause remanded for further pro-
ceedings consistent with this opinion.