## Louisville Bridge Company v. Sieber, by, et al.

(Decided January 28, 1914.)

### Appeal from Jefferson Circuit Court (Common Pleas, Second Division).

1. Railroads—Trespassers—When Cannot Recover for Accident.— It being unlawful under the statute, for any person other than a passenger or employee to get on or off cars while in motion, a trespasser swinging off a moving train voluntarily, and so getting his foot into an unblocked frog in the street, cannot recover where the accident would not have occurred, but for his violation of the statute.

2. Railroads—Trespassers—When May Recover.—But if he was forced from the train by the railroad authorities or any of them, he may recover if his injury was due to his being forced from the moving train, or to the dangerous condition of the street by reason of the frog or both combined.

3. Railroads—Liability of Lessor of Track for Injury Done One of Public.—The lessor of a railroad track is bound jointly with the lessee for any injury done one of the public.

4. Railroads—Unblocked Frogs—Section 780, Kentucky Statutes.— Section 780, Kentucky Statutes, as to unblocked frogs is for the protection of employees and affects in no way the liability of a railroad company for an unsafe condition of the street in which the tracks are laid..

5. Railroads—Verdict in Favor of Lessee—Not Bar to Action Against Lessor.—A verdict and judgment in favor of the lessee is no bar to a prosecution of the action against the lessor although sued jointly.

CHARLES H. GIBSON and WILLIAM W. CRAWFORD for appellant.

J. MORGAN CHINN, ROBERT A. CHRESTE and O'DOHERTY & YONTS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

On Sunday afternoon, July 24, 1910, between four and five o'clock, John Sieber, then about seventeen years of age, and a companion by the name of Reed Bunch, for the purpose of stealing a ride, got on the front end of a northbound Illinois Central Railroad train at Fourteenth and Kentucky streets in the city of Louisville, just as the train was starting from the station. They went first to the compartment for colored people and took a seat. While sitting there Sieber called the attention of his companion to the fact that they were in the car for colored people saying they ought to have gotten on the other car. He then got up and walked back to the platform. As to what happened then the evidence is conflicting. According to the testimony for him, about the time the train reached Maple street, the colored porter came back from the baggage car, and seeing him on the steps of the car, cursed him, told him to get off and made a grab at him; to get away from the porter he swung off the car; as he did this his right foot which he put forward, struck a rail and slid along the rail to a frog; the front of his foot became fastened in the frog, so that he fell forward on his face; in trying to extricate himself he turned over, and his other leg got under the train and was cut off. He brought this suit against both the railroad company and the Louisville Bridge Company, which owns the tracks, to recover for his injuries, charging that he was forced off the train by the porter, and that the bridge company negligently maintained in the street a dangerous unblocked frog.

According to the proof for the defendants, Sieber swung off the train voluntarily when the porter had not seen him or spoken to him and did this with a view to getting on at the hind end of the next car, and going on down to the river where he and Bunch wished to go bathing; that he landed in the street safely, but in attempting to get on at the rear end of the next car, slipped and fell and thus received the injury complained of, some twenty feet north of the frog in which he claimed to have hung his foot. The proof on the trial was to the effect that the frog was of an approved pattern in common use which was blocked by a piece of metal until the space was four inches wide, but that the rails were somewhat worn and slivered so that the actual space was from 3 1-2 inches to 3 7-8 inches. The shoes which Sieber had on at the trial were 3 1-2 inches wide. The jury to whom the case was submitted returned a verdict in favor of the railroad company, and in favor of the plaintiff against the bridge company for $5,000. The court entered judgment accordingly and the bridge company appeals.

Sections 780 and 805, Kentucky Statutes, are as follows:

"Before the first day of January, 1894, every company shall adjust, fix or block the frogs on its track to prevent the feet of its employees from being caught therein." (Section 780.)

"It shall be unlawful for any person, other than passengers and employees, to get on or off on the outside, or to swing on or hang on from the outside of any engine or car whilst the same is in motion or switching, or immediately preceding its moving or switching. Any person violating the provisions of this section shall be fined not exceeding ten dollars for each offense." (Section 805.)

It is insisted for the bridge company that as it was unlawful for Sieber to get on or off of the train while in motion and he was hurt in doing an unlawful act, the court should have instructed the jury peremptorily to find for the defendants. On the other hand, it is insisted for the plaintiff that though he did an unlawful act in swinging off the train he may recover though hurt in this act if this injury was by reason of an unblocked frog or dangerous condition of the street maintained by the bridge company.

The railroad train, though belonging to the Illinois Central Railroad Company, was operated on this track under the franchise of the bridge company which owned the track. Section 203 of the Constitution provides:

"No corporation shall lease or alienate any franchise so as to relieve the franchise or property held thereunder from the liabilities of the lessor or grantor, lessee or grantee, contracted or incurred in the operation, use or enjoyment of such franchise or any of its privieges."

Under this provision we have held in cases like this that the corporation owning the railroad, is responsible to the public for the wrongs done by its lessee in operating it. (McCabe v. Maysville, Etc., R. R. Co., 112 Ky., 861; I. C. R. R. Co. v. Shegog, 103 S. W., 323.) Although Sieber was on the train unlawfully, and was a trespasser upon it, the railroad company had no right wantonly to injure him. The train according to the testimony was running from ten to fifteen miles an hour, and if he was forced from the train by the railroad company or its servant acting within the apparent scope of his authority, the railroad company was answerable for this wrong, and the bridge company likewise answerable, if by reason of it, he was injured. Or, if in addition to this, the street was not in a reasonably safe condition for use by persons exercising ordinary care for their own safety, and he was injured by reason of the combined effect of being wrongfully forced from the train by the railroad company, and the dangerous condition of the street as maintained by the bridge company, he may recover. On the other hand, if he voluntarily swung off the moving train without being forced to do so, his act was unlawful, and it is apparent from his own testimony that the cause of his being hurt was his foot slipping along the rail from the momentum which the train gave him until it got fastened in the frog. In other words, it is apparent from his testimony that his foot would not have gotten in the frog but for his act in swinging from the moving train. In Cooley on Torts, the principle is laid down that to deprive a party of redress because of his own illegal conduct the illegality must have contributed to the injury; and the following is quoted with approval:

"To make good the defense (of illegality) it must appear that a relation existed between the act of violation of law, on the part of the plaintiff, and the injury or accident of which he complains, and the relation must have been such as to have caused or helped to cause the

injury or accident, not in a remote or speculative sense, but in the natural and ordinary course of events as one event is known to precede or follow another. It must have been some act, omission or fault naturally and ordinarily calculated to produce the injury, or from which the injury or accident might naturally and reasonably have been anticipated under the circumstances.''

The plaintiff himself testified:

''Q. Did you swing clear of the step? A. If I had swung clear of the step, I don't guess I would have got my foot caught into the rail. Q. I asked you if you did, I don't know. A. No, I did not. A. You didn't swing clear of the step? A. No, sir. Q. Did the step hit your body? A. I was hit all over, by the step and everything.''

This shows clearly that the plaintiff's swinging from the moving train caused, or helped to cause, the injury. The impetus received from the train was the cause of the plaintiff's injury, and this impetus came by reason of his swinging off the train illegally. We, therefore, conclude that on his own evidence he cannot recover if he swung off the train voluntarily without being forced off. But if he was forced off, the statute has no application; for it only applies to acts done voluntarily.

We, also, conclude that the circuit court properly refused to instruct the jury peremptorily to find for the defendants; but the instructions which he gave the jury did not present the law as we have outlined it. He told the jury that the plaintiff could not recover if he was injured in trying to get on the train, but he should have applied the same rule if he was injured in voluntarily getting off the train, when he was not forced to do so, and in no case was the plaintiff entitled to recover against the bridge company unless he was forced from the train, as set out in the first instruction; and he could recover if he was injured by reason of this or by reason of this and the dangerous condition of the street combined. The second instruction of the court did not properly present the law of the case, so far as the frog is concerned. In that instruction the court should simply have submitted to the jury the question whether the street by reason of the condition of the frog was in a reasonably safe condition for use by persons exercising ordinary care for their own safety. Section 780, Kentucky Statutes, is intended for the protection of employees; it adds

nothing to, and subtracts nothing from, the obligation of the bridge company to the public in its use of the street. It must keep the street in proper condition and if it failed to do this, it is no defense that it used a standard frog blocked in the usual way; and on the other hand, if the street was reasonably safe for persons using ordinary care for their own safety, it is not liable to the plaintiff because the frog was not properly blocked as required by the statute.

The bridge company and the railroad company were not adversary parties in this case. The bridge company would be in no manner concluded by a verdict and judgment against the railroad company; and the same effect must be given the verdict and judgment in favor of the railroad company. The case stands for trial between the plaintiff and the bridge company as though no trial had been had between the plaintiff and the railroad company. The verdict in favor of the railroad company may have been rendered by the jury upon the ground that the dangerous condition of the frog was the proximate cause of the injury.

We have held in several cases that where the master was sued jointly with the servant for whose negligence the master was sought to be held liable, the fact that there was a verdict against the master, and none against the servant, was no reason for setting aside the verdict against the master. (I. C. R. R. Co. v. Murphy, 123 Ky., 587; C. & O. Ry. Co. v. Booth, 149 Ky., 245.) In Broadway Coal Mining Co. v. Robinson, 150 Ky., 716, there was a verdict in favor of the defendants primarily liable, and this was held no reason for setting aside the verdict against the other defendant, and not to affect its right to seek indemnity from them.

In Pullman Co. v. Cin., Etc., R. R. Co., 147 Ky., 498, the Pullman Company and the railroad company were jointly sued by a brakeman who had been injured in the service of the railroad company by the alleged negligence of both of the defendants. On a trial of the case he had recovered against the railroad company and failed to recover against the Pullman company; the railroad company then brought suit against the Pullman company to recover the amount which it had paid on the judgment on the ground that the negligence of the Pullman company was the proximate cause of the injury to Ward, and that it was the party primarily liable. The Pullman company

relied on the judgment in its favor in the suit brought by Ward against it and the railroad company. It was held that the judgment was not a bar to the action by the railroad company against the Pullman company, as they were not adversary parties in the former suit and the rights of the railroad company against the Pullman company were not affected by the failure of the plaintiff to make out his case against the Pullman company, in the former suit brought by Ward, and over which the railroad company had no control. The same principle applies here. If the bridge company is held liable to Sieber, its rights against the railroad company will not be affected by the failure of Sieber to make out his case against the railroad company. The case is to be tried anew as though no trial has been had.

Judgment reversed and cause remanded for a new trial.