## Louisville & Nashville Railroad Company v. Johnson.

(Decided February 8, 1916.)

### Appeal from Franklin Circuit Court.

1. **Railroads—Lease—Lessor Liable for Injuries Inflicted by Lessee.** —A railroad company chartered under the laws of this State or empowered under the laws thereof, to acquire, hold and operate a railroad, cannot lease same to another railroad company so as to relieve itself of the obligations imposed by law to the public in the operation of railroads in this State; and in such cases, the lessor is liable to any member of the public for neglect and wrongful injuries inflicted by the lessee to any member of the public, and this includes a passenger.

2. **Trial—Judgment Non-Obstante Veredicto—New Trial.**—Where upon the trial of the case, a peremptory instruction is offered which should have been given, but which was refused, and the party offering it subsequently entered a motion after verdict for a judgment in his favor, notwithstanding the verdict, it is the better practice that the court should overrule such motion, but

grant to the party making it a new trial for the error in overruling his motion for a peremptory instruction.

3. Carriers—Degree of Care Required of to Passenger.—Carriers of passengers owe to them the highest degree of care while the relationship of carrier and passenger exists, and if a passenger is physically or mentally afflicted so as to impair his ability to exercise care for his own safety and the carrier has knowledge of this fact, it is the duty of the latter to exercise additional care toward such passenger and give him additional aid in entering upon or alighting from a train as the impairment of his abilities should require.

4. Carriers—Degree of Care Required of to Passenger.—But this increased duty toward a passenger where his afflictions are such as not to seriously interfere with his locomotion, or otherwise seriously impair his ability to care for himself, does not require the carrier to enter into the car and conduct such passenger to a seat when entering the car, or to hunt him up when he arrives at his destination and conduct him to the platform for the purpose of departing from the car. But in such cases as to such passenger, when the train shall have stopped long enough to give passengers a reasonable opportunity to alight, the carrier's duty is to exercise such care as the conditions require in aiding the passenger to alight after he shall have presented himself for that purpose.

5. Carriers—Injuries to Passenger—When Carriers Not Liable.— When the train has stopped a reasonable and the usual length of time for passengers to alight at that particular designation and a passenger fails and refuses to alight, or present himself for that purpose, within the time that the train was stopped, and after it starts the passenger undertakes to get off, and in doing so is injured, the railroad company is not liable to him for damages for such injuries unless they saw his perilous situation in time, by the exercise of ordinary care, to have avoided it by the exercise of ordinary care by it.

SHELBY, NORTHCUTT & SHELBY and T. L. EDELEN for appellant.

O'REAR & WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On November 8, 1913, the appellee, J. A. Johnson (whom we shall hereafter designate as plaintiff), at about 4:15 P. M., boarded a train at Winchester, Ky., to go to Frankfort, Ky., which train was that of the Chesapeake & Ohio Ry. Co. In due time the train arrived at Frankfort, but according to the testimony, something like five minutes later than its schedule time, and while attempting to alight from the train at the latter place, the plaintiff fell and in some manner one

of his legs got caught under the train and was run over by the front trucks of one of the coaches and had to be amputated. There was an injury to the knee of the other leg which appears to have rendered it almost, if not, stiff, and there was a slight wound about the head which seems not to have been very serious, but more or less painful and annoying at the time. He was carried to a hospital in Frankfort, and after remaining there for quite a while, he recovered sufficiently to be able to, with the assistance of an artificial limb, travel about to some extent. He filed this suit in the Franklin Circuit Court on December 13, 1913, against the appellant, Louisville & Nashville Railroad Co. (whom we shall hereafter refer to as defendant) seeking to recover against it as damages for his injury, the sum of $25,500.00.

Upon the first trial of the case there was a verdict and judgment against the defendant for the sum of $15,000.00, but the trial court granted to the defendant a new trial and set aside that verdict, and upon a second trial there was a verdict and judgment in favor of plaintiff for the sum of $6,000.00, and defendant's motion for a new trial having been overruled, it prosecutes this appeal.

Before considering the merits of the case, there are two preliminary questions urged upon us by defendant, which we deem necessary to dispose of. They are:

1. That the defendant was not operating the train upon which the plaintiff took passage, but that same was being operated by the C. & O. Ry. Co. over a track of railroad from Lexington to Louisville, owned by the defendant, but which had been long previously leased to the C. & O. Ry. Co. for the purpose of it operating between said points trains, exclusively owned by it, and that the injury to plaintiff, if produced by any negligence at all, was that of the latter company as lessee of defendant, and for which the defendant is not at all liable.

2. At the close of the plaintiff's testimony at the first trial, the defendant moved the court to peremptorily instruct the jury to return a verdict in its behalf, which was overruled and exceptions taken, and the same motion was renewed at the close of all of the testimony which was heard upon that trial, with the same result, and after the returning of the verdict and before a rendition of the judgment thereon, the defendant entered a

motion for a judgment notwithstanding the verdict; this being based upon the fact that its answer contained, in addition to a general denial, a plea of contributory negligence on behalf of plaintiff, and which plea of contributory negligence was not denied either by pleading or being controverted of record.

Considering these questions in the order named, it appears that the C. & O. Ry. Co., owns a line of railroad from Lexington, Ky., eastward, and that the defendant owns a line of railroad from Lexington through Frankfort and running into the city of Louisville, and that this condition existed on the 23rd day of March, 1895. On that day, in consideration of certain agreements and counter-agreements, there was a written lease entered into between defendant and the C. & O. Ry. Co. by which, for the considerations stated, the latter company was given the privilege to operate its trains between Lexington and Louisville, running through intermediate stations, including Frankfort, over the tracks of the defendant, and it is claimed in this case that notwithstanding this lease, inasmuch as the injuries complained of were inflicted by the Chesapeake and Ohio Railway Co., this defendant is not liable.

It would serve no useful purpose to set out in this opinion any of the stipulations or conditions of that lease contract, because on a previous occasion it was before this court wherein a similar question was presented, and the contention now made by defendant was then denied by this court. (L. & N. R. R. Co. v. Breeden's Admr., 111 Ky., 729). It was therein determined that although it might appear that both the lessor and lessee of a railroad track had authority to enter into such a contract, still the lessor company could not relieve itself by such a lease of the duties which it owed to the public to maintain and operate its railroad in such a way as the law demands of it, which is in a reasonable, prudent and careful manner and without negligence resulting in the injury or hurt of any member of the public, and if any member of the public shall, through the negligence of the lessee, sustain injuries from which damages result, the lessor would be liable for such damages to the injured party as much so as if the same had been the result of acts of it or any of its agents or servants. (See also McCabe's Admr. v. Maysville & B. S. R. Co., Etc., 112 Ky., 861; Swice's Admr. v. Maysville & B. S.

R. Co., Etc., 116 Ky., 253; I. C. Ry. Co. v. Sheegog's Admr., 126 Ky., 252.)

It was furthermore determined in the Breeden case, *supra*, that: "The contract above quoted (which is the same herein involved), is nothing more than a traffic arrangement. The two companies jointly maintained the road bed."

It is insisted, however, that in as much as the injured parties in the cases referred to were not at the time passengers upon the lessee's train, that this rule should not apply herein, because the relationship of the plaintiff as passenger to the lessee was contractual and is to be governed by the same rule applicable as between the employes of the lessee and it, and the effort is made to bring a passenger of the lessee in the same category, with an employe of the lessee.

This is wholly untenable. The very foundation of the rule which relieves the lessor of liability for injuries to the employes of the lessee, is that such employes established their relationship to the lessee by a *voluntary* act on their part. Not so with the passenger. While in one sense, he voluntarily becomes a passenger on that particular train, yet in a still further sense he is compelled to take that particular train if he wants to go to a point on that road at that particular time, and because he assumes voluntarily the position of passenger towards the lessee carrier, he does not thereby and for the time being cease to be a member of the public to whom the lessor owes certain specified duties in carrying out the purposes of its charter. The contention of the defendant upon this point is unsound and cannot be upheld.

Second. It is urged that the motion for a judgment, *non obstante veredicto* at the close of the first trial should have prevailed, and that the trial court erred in granting a new trial, thereby giving an opportunity for the plaintiff to reply to the plea of contributory negligence, and we are asked to reverse the judgment and direct the lower court to enter a judgment for the defendant. This, we cannot do. (C. & O. Ry. v. Thieman, 96 Ky., 509; Bluewing v. Buckner, 12 B. M., 248; L. & N. R. R. Co. v. Copas, 95 Ky., 460; Mast v. Lehman, 100 Ky., 466; L. & N. R. R. Co. v. Schweitzer's Admr., 14 Ky. L. R., 856; Schulte v. L. & N. Ry. Co., 128 Ky., 631; Louisville Ry. Co. v. Hibbett, 139 Ky., 44; L. & N. R. R.

Co. v. Tuggles, 151 Ky., 412; Conn. Fire Ins. Co. v. Moore, 154 Ky., 20.)

The direct question of practice under consideration was presented to this court in the case of Mast v. Lehman, *supra,* and decided contrary to the present contention of the defendant; and this case is referred to with approval in this court's opinion in the case of Conn. Fire Ins. Co. v. Moore, *supra,* in which latter case this court upon the question, said:

"It is the rule that where a party asks for a peremptory instruction which should have been given, he is not thereafter entitled to a judgment notwithstanding the verdict, but only to a new trial for the error of the court in refusing the peremptory." (Citing both the Lehman and Hibbett cases.)

In the case of Louisville Ry. Co. v. Hibbett, *supra,* almost the precise question of practice herein involved was before this court, and denying the present contention, this court quoting with approval from the Lehman case, said:

"The motion for a peremptory instruction should have been sustained, and certainly the company ought not to suffer because of the error of the court committed over its objection and after it had done everything it could do to save its rights. This precise question was before us in Mast v. Lehman, *supra,* in which the petition was so fatally defective as not to entitle the plaintiff to a verdict. The court said: 'At the conclusion of the trial the defendant moved the court to peremptorily instruct the jury to find for the defendant. This motion of defendant should have been sustained by the court, and would have been sustained if the court had been aware of the true condition of the pleadings. It is true the plaintiff objected to the instruction; but in our opinion such objection did not relieve the court of its obligation to properly instruct the jury as to the law of the case based upon the pleadings and the proof. If the court had sustained this motion, as it was clearly his duty to do, it would necessarily have brought to the attention of the plaintiff the defense which had been so carefully concealed from the very beginning of the case. And before the submission of the case to the jury he would have had an opportunity to have offered an amendment curing the defects in his petition, which, in furtherance of justice, it would have been the duty of

the court to have allowed to be filed.' " See also the very recent case of Lancaster Electric Light Co. v. Taylor, 168 Ky., 179.

To hold in accordance with this rule does not say that the asking for a peremptory instruction is a waiver of the right to move for a judgment, notwithstanding the verdict. The one is universally recognized as challenging the sufficiency of the evidence, while the other is a challenge directed to the sufficiency of the pleading; but when a motion for a peremptory has been made whether for an insufficiency of pleading, or evidence, and which should have been given, but was not, a subsequent motion for a *non obstante* judgment, if sustained, would place the right to a hearing by the adverse party beyond repair; and the court in furtherance of the general principle that it is preferable that cases should be disposed of on their merits, rather than upon technicalities, should in such cases as we are here dealing with, reconsider his ruling in denying the motion for a peremptory instruction and grant a new trial, rather than sustain the motion for a judgment, notwithstanding the verdict. If the motion for a peremptory instruction had not been made in such cases, there would be no error which the trial court could correct by the granting of a new trial, and he would then be compelled to sustain the motion for a judgment, notwithstanding the verdict. We are, however, confronted with no such conditions in this instant case. We, therefore, hold that there was no error in refusing the motion for a verdict made by the defendant under the facts presented. This brings us to a consideration of the merits of the case.

It appears that a year or more previous to this accident, the plaintiff on account of being exposed to the cold weather, had sustained injuries by frost bite whereby he lost some of his fingers to both hands and some of the toes to both of his feet, but he does not seem to have been otherwise seriously injured, and it is insisted that upon boarding the train upon the occasion involved, at Winchester, he explained to an agent and servant of the C. & O. Ry. Co., his crippled condition and requested special aid in alighting from the train upon the arrival at his destination, which he says was promised to him, and which he claimed was not rendered. It is not clear, however, that the petition charges this failure to be a causal act resulting in the injury to plain-

tiff, but for the purpose of this case we will treat the
allegations as being broad enough to cover this point.

It is also charged that the railroad company suffered
other passengers to crowd upon the train when it ar-
rived at Frankfort and thereby prevented plaintiff from
alighting, and that through its negligence and careless-
ness the train, at the time plaintiff was about to alight,
was caused to make an unusual or unnecessary jerk,
whereby he was thrown to the platform and injured.

The entire part of the petition setting up the facts
constituting plaintiff's grounds for recovery, are as
follows:

"Plaintiff says that of their gross negligence and
carelessness, the defendant, its agents, servants and em-
ployes in charge of said train failed and refused to give
him the increased care or attention made necessary by
his condition, or any care or attention, but upon the con-
trary when the train arrived at Frankfort, of their gross
carelessness and negligence suffered new passengers to
crowd upon the train and into the doorways and aisles of
the coach, before plaintiff could alight, and whilst plain-
tiff was on the platform of one of defendant's coaches
preparatory to alighting, and whilst using due care for
his own safety, considering his condition, the said de-
fendant's said agents and employes by their gross negli-
gence and carelessness, caused an unusual and unneces-
sary jerk of the train whereby the plaintiff was sud-
denly thrown from the platform, and steps of said train
under its wheels."

It will be observed that the failure of those in charge
of the train to render to him the increased aid which he
insists that his crippled condition demanded, is not
clearly charged as the producing cause of his injury.

The proof shows that, notwithstanding the crippled
condition of the plaintiff, he was perfectly able to walk
about and go wheresoever he pleased. He resided with
his daughter about four miles from Winchester and in
going to town frequently walked part of the way and
sometimes all the way, and on the day that he made this
trip he started from his home with a grip, or suit case,
and after walking perhaps one-half of the way he rode
into town in a vehicle with a traveler on the turnpike.
He deposited his grip in a saloon where he drank a milk
punch, and after leaving the saloon and visiting some
places in town, he returned and drank another milk

punch, and later on after engaging in other travel about the city, and about 11:00 o'clock, he returned to the saloon and drank a third milk punch. At this time he purchased two pints of whiskey and put them in his grip, or suit case. He then went to the home of one Mr. Dougherty, where he had his dinner, and about 3:30 o'clock he left this place and went to the saloon and took out one of the pints of whiskey and put it in his pocket and then went to the depot and purchased his ticket and subsequently boarded the train. He took his seat on the left hand side of the rear end of the smoking car, the next car following being the day coach, or ladies' car. He put his grip on the seat immediately in front of the one he was occupying, and there was sitting beside him a young man whose name does not seem to be known to anyone testifying in the case, and who was not introduced as a witness. Other passengers, however, and indeed it is admitted by plaintiff, say that en route plaintiff offered to this fellow passenger a drink and at the same time took one himself. Plaintiff claims that his companion passenger accepted the drink, while other passengers did not see this, but testified that the plaintiff's offer was refused. However this may be, within a comparatively short while a controversy arose between the plaintiff and this passenger and the former became so loud and boisterous in his talk that it attracted the attention of other passengers in the car, the language used by him, as testified to by the witnesses, being by no means the most elegant. As a consequence of this he changed his place in the car, and by the time he got to Frankfort, he was unable to locate his grip, or suit case, and according to the proof made no effort either to find it or to alight from the train until after all of the passengers had gotten off and all those desiring to take passage had gotten on and many, if not all of them, had secured seats in the respective coaches. About this time some one suggested to him that the train had arrived at Frankfort, whereupon he began to search for his grip, and after finding it and after he got within three or four feet of the smoking car door going out, the train made the usual start without any jerk, unusual or otherwise, and by the time plaintiff got out upon the platform the train was cleverly started, and he, over the protests of the brakeman, and that of a Mr. Wilson, who is a citizen of Frankfort, and whose testimony is both intelligent and

convincing, undertook to jump off the car, which was then moving at a speed of from two to three miles per hour, and in so doing fell and thereby sustained the injuries for which he sues.

There is no dispute but that, at the usual place the station of Frankfort was announced in the usual way, and no testimony showing that the train did not stop upon this occasion the usual time, which was about three minutes. There is absolutely no proof that any unusual number of passengers crowded onto the car and there was such an utter failure to produce evidence of any jerking start of the train that the plaintiff himself abandons this theory by failing to offer any instruction upon it.

The court in submitting the case to the jury by its instruction (No. 1), did so solely upon the theory that the plaintiff was physically impaired by reason of being crippled, and that if the defendant and its agents and servants knew this, it was their duty to render to him aid in alighting from the train beyond that ordinarily accorded other passengers; and that if the jury believed that the agents and servants negligently failed to do this, and by reason thereof, the plaintiff was injured, it would be the duty of the jury to return a verdict for the plaintiff. Other parts of the instruction set forth in apt terms the rule as to the measure of damages. There is no doubt in this State as to the rule fixing the degree of care which a carrier owes to its passengers. This is the highest degree of care and this duty exists until the relationship of passenger and carrier ceases, and it has been time and again decided that such relationship did not cease until after the passenger had alighted from the train and had gotten off of the railroad premises by the means provided by the carrier for a departure from the station. (C., N. O. & T. P. Ry. Co. v. Vivion, 19 Ky. L. R., 687.)

It is an equally well established rule that a physically disabled passenger shall receive such care as is commensurate with his infirmities, if such infirmities disable him from properly caring for his own safety, provided the carrier has knowledge of such infirmities. But we are unable to find any authority either in this State, or elsewhere, nor have we been cited to one where a passenger who was able to walk and move around as the plaintiff undoubtedly was in this case, according to the

testimony, the carrier should give him the extra care of going into the coach and specially calling his attention to the arrival of the train and to assist him to the steps in order for him to alight and to see that he presented himself for the purpose of making his exit before the arrival of the time for the train to depart, after it stopped a sufficient length of time to have enabled him to have done this of his own accord with safety. If, as contended in this case, the physical condition of plaintiff rendered it unsafe for him to attempt to alight from the train unassisted, and such was known by the agents and servants in charge of the train, it would have been their duty to have rendered such assistance as his physical necessities required, after he had presented himself at the platform and steps for the purpose of alighting. But we have no such case here. The plaintiff neglected to present himself within the time which the law allowed him to do so and no such assistance could be rendered him, and the only dereliction, if any, that the testimony shows on the part of the carrier, is that its agents and servants failed to go into the coach and find plaintiff's baggage and lead him to the steps and assist him off the train. This they were not required to do.

To hold that to a passenger in the physical condition of the plaintiff is due from the carrier such duties, would be violating all adjudicated rules upon the subject, both in this State and other jurisdictions, so far as we have been able to discover. As stated, numbers of passengers, including those already on the train, as well as those who boarded the train at Frankfort, testify as to the length of time which the train stopped, and that the train was going from two to three miles per hour when the plaintiff attempted to alight; that some of the passengers hollowed out, "Don't let that old man jump off the train," and the witness Wilson admonished him not to do so, as did the brakeman, and the latter in order to prevent the plaintiff from being injured pulled the whistle cord to signal the engineer to stop, which was done within a moment's time, but in the meantime plaintiff had, by his own act, sustained the injuries in the manner hereinbefore stated. The brakeman urged him to wait till the train could be stopped.

We think the evidence clearly shows that this unfortunate accident was the result of the acts of the plaintiff in not making an effort to alight from the train

while it was standing, which as we have seen was of sufficient length to have amply enabled him to do so, and to have presented himself at the steps so that he could have been rendered what assistance if any he needed. If he had been injured while attempting to alight while the train was standing without any extra aid, he might have been entitled to recover under the facts disclosed by the record, but no such conditions are shown to have existed in this case. His failure to make any efforts in this regard, and his attempting to alight after the expiration of the stopping time of the train and while it was moving, were beyond question the causes of the accident and of his resulting injuries, and were in nowise produced by any acts of commission or omission on the part of the carrier.

It results, therefore, that the peremptory instruction to find for the defendant should have been given, and if the facts are substantially the same upon another trial, the motion should prevail.

Judgment reversed with directions to proceed in accordance with this opinion.