### Raikes v. Payne, Director General.

(Decided April 20, 1923.)

### Appeal from Henderson Circuit Court.

1. **Master and Servant—Failure to Furnish Safe Place to Work Should be Pleaded.**—Where an injured servant seeks a recovery because of master's failure to furnish him a safe place to work, such ground of recovery should be pleaded.

2. **Railroads—Lessor Railroad Company not Liable to its Servant for Negligence in Operation by Lessee.**—Within the rule that a railroad which leases its tracks or grants joint operating privileges to another is liable to third persons for the negligent operation of trains over the road by the lessee or licensee, the servant of the lessor or licensor is not a third person or member of the public, and the lessor or licensor is not liable to him except for its failure to maintain the premises in a reasonably safe condition.

3. **Railroads—Lessor Employer Held Not in Control of Lessee's Train.**—Where plaintiff's employer had leased a track to another railroad company along which the latter company was negligently operating the train which injured plaintiff, proof that the train was still in the interlocking system where it was controlled by a tower man in the employ of the lessee company, and had not yet reached the point where it must get permission from the lessor's dispatcher to proceed, shows that the lessor had no control over the operation of the train, so that it was not negligent in permitting it to be operated at excessive speed and without sufficient warning.

4. **Appeal and Error—Rejection of Evidence as to Habitual Use of Railroad Track by Pedestrian Held not Prejudicial.**—In an action

for injuries to a railroad employe, it was not error prejudicial to plaintiff to exclude evidence that the portion of the defendant's tracks, where he was injured was habitually used by employes in going to and from the station, where the evidence showed that the injury resulted from the negligent operation of a train of a lessee company which was not subject to the defendant's control.

A. LEA KING and JOHN C. WORSHAM for appellant.

JOHN L. DORSEY, JR., and TRABUE, DOOLAN, HELM & HELM for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Proceeding under the Federal Employers' Liability Act, Labe S. Raikes brought this suit in the Henderson circuit court against the Director General of Railroads in charge of the operation of the Louisville & Nashville Railroad Company and the Illinois Central Railroad Company, to recover damages for personal injuries. The action as to the Illinois Central Railroad Company was removed to the United States district court for the western district of Kentucky and afterwards dismissed. On the trial of the cause against the Director General in charge of the operation of the Louisville & Nashville Railroad Company the trial court gave a peremptory instruction in favor of the defendant. Plaintiff appeals.

Though the railroads were under federal control, at the time of the accident, yet, for the sake of brevity and clearness, we shall discuss the case as if only the railroads themselves were involved and not the Director General in charge of their operation.

In support of his cause against the Louisville & Nashville Railroad Company appellant pleaded the following facts: The Louisville & Nashville Railroad Company owned and operated certain tracks and railroad yards in the city of Henderson and a bridge extending from Henderson across the Ohio river, upon which bridge a railroad track was located and operated. The Illinois Central Railroad Company operated its trains in and through said yards of the Louisville & Nashville Railroad Company under a contract by which such user was permitted upon certain terms as to compensation. The Louisville & Nashville Railroad controlled the operation of all locomotives and trains in said railroad yards, both its own and those of the Illinois Central Railroad Company, and, subject to such control, the trains of the Illinois Central

Railroad Company were being operated in the yards at the time of the accident. Appellant was a brakeman in. the employ of the Louisville & Nashville Railroad Company, and had made a trip on a freight train from Howell, Indiana. He left the train in the yards at Henderson for the purpose of crossing to the depot to await the arrival of a north-bound Louisville & Nashville train on which he intended to return to Howell. In going to the depot it was necessary for him to walk through the railroad yards and across a track upon which the trains of the Illinois Central Railroad were being operated. While doing so he was struck and severely injured by an Illinois Central train. For some time prior to the accident the railroad yards and tracks had been used by the railroad employes in going along and across same in discharge of their duties' with the knowledge and acquiescence of the railroads. The Illinois Central Railroad Company was negligent because it ran its train at an excessive rate of speed and failed to give any warning of its approach, and the Louisville & Nashville Railroad Company was negligent in permitting the Illinois Central Railroad to run its train at an excessive rate of speed and without sufficient warning.

According to appellant's evidence he left Howell, Indiana, about 9:30 p. m. on the night he was injured, and reached Henderson some time after eleven o'clock p. m. When he reached Henderson he was instructed by the conductor to take the registration card into the telegraph office and leave it. The telegraph office was located just across from the depot, and between it and the depot were tracks Nos. 1, 2 and 3. After giving the card to the operator, he started from the telegraph office to the lunch room in the passenger station to get something to eat and catch L. & N. train No. 54, on which he was to leave some time later. In crossing the tracks he was struck and severely injured by an Illinois Central train running north on track No. 2, which, according to his evidence and that of others, was running at a high rate of speed and gave no signals of its approach.

There was introduced in evidence a contract dated March 1, 1901, between the Louisville & Nashville Railroad Company, the Illinois Central Railroad Company and the Louisville, Henderson & St. L. Railroad Company. It appears from the contract that the Illinois Central Railroad Company was the owner in fee of certain land in Henderson on which it was proposed to build

a union passenger station. The contract recited that it was the desire and purpose of the parties to establish and jointly to make use of a passenger station with appurtenant tracks, platforms, sheds and roadways, and all other needful facilities, in the city of Henderson; that it was the desire of the Louisville, H. & St. L. Railroad Company and the Illinois Central Railroad Company that the Louisville & Nashville Railroad Company should build a passenger station, etc. In consideration of the benefits to be derived by all parties thereto, the Illinois Central Railroad Company granted and set apart in perpetuity the land which it owned, and agreed to hold same in trust for the uses set forth in the contract. The Louisville & Nashville Railroad Company agreed, within a reasonable time, to construct upon said tract of land and its own adjoining right of way a commodious passenger station, together with the necessary platforms and sheds, and to rearrange its present tracks and construct additional tracts required for the convenient use of the passenger station. The Louisville & Nashville Railroad Company further agreed to maintain the three tracks next to the station to be used for passenger traffic of the parties, together with the necessary switches and connections, the cost thereof to. be apportioned between the parties upon a certain basis not material. It was provided that all employes, including ticket agents, operators, baggage men, porters and switchmen, attached and connected with the operation of the passenger station, should be joint employes. There was also a provision that each of the parties should be directly and solely responsible for loss, damage or injury to property or persons caused by the wrongful or negligent act of its employes, but that all loss and damage caused by the negligence of the joint employes should be regarded as the cost of operation and apportioned among the parties.

Mrs. Bessie Tweddell, operator at the Union Station, testified that Illinois Central trains, from the time they got into Henderson yards until they got into Evansville, were run on Louisville & Nashville orders. The tower man had control of the interlocking plant and threw the switches for the trains. Will Kellner, the tower man, testified that he threw the switches for trains coming into the yards and out on to the bridge on signals from the train. He could not let any train on the bridge until he got orders from the L. & N. dispatcher at Evansville. If a train wants to go over the bridge without stopping or

switching, one of the crew goes to the L. & N. telegraph office, and the operator there calls the L. & N. dispatcher at Evansville and he tells her whether the train can go or not. I. C. track No. 2 was ordinarily used by the Illinois Central alone, but in cases of emergency, he sometimes sent the Louisville & Nashville trains on that track. On cross-examination the witness stated that the Illinois Central train could start at Second street and come up to what is known as the "fouling piece" without any control from anyone except himself.

While the Henderson yards were jointly used by the two railroads, the evidence shows that the track on which the accident occurred was an Illinois Central track built on Illinois Central property. While it is true that under the contract between the two companies the Louisville & Nashville Railroad was charged with the duty of maintaining the track, there was no failure of duty in this respect as the accident was not caused by the defective condition of the track.

It is insisted that the case should have gone to the jury on the theory that the Louisville & Nashville Railroad Company failed to furnish appellant a safe place to work. We have often ruled that where the injured servant seeks a recovery because of the master's failure to furnish him a safe place to work, such ground should be pleaded. L. & N. R. R. Co. v. Irby, 141 Ky. 145, 132 S. W. 393; Monroe v. Standard Mfg. Co., 141 Ky. 549, 133 S. W. 214; Ohio Valley Coal & Mining Co. v. Heine, 159 Ky. 586, 167 S. W. 873. Appellant did not plead such ground in terms, nor did he plead facts showing that such ground was relied on. So far as the petition was concerned, the physical conditions under which he was required to work were perfectly safe, and the sole cause of his injury was the negligence of the L. & N. Railroad in permitting the Illinois Central Railroad to run its trains at excessive speed and without sufficient warning.

Nor can liability be predicated on the theory of joint operation. While a railroad which leases its tracks or grants joint operating privileges to another company is liable to third persons and members of the public for the negligent operation and handling of trains over the road by the lessee or licensee, the servant of the lessor or licensor is not a third person or member of the public within the rule, and the lessor or licensor is not liable to him except for its failure to maintain the road, station houses,

etc., in a reasonably safe condition.   Hunsaker's Admrx. v. C. & O. Ry. Co., 185 Ky. 686, 215 S. W. 552; C. & O. Ry. Co. of Kentucky v. Vaughan's Admrx., 159 Ky. 433, 167 S. W. 141.

There being no liability on the above grounds, it remains to determine whether the claim that the Louisville & Nashville railroad Company controlled the operation of the Illinois Central train may be sustained.   While there was evidence that Illinois Central trains, in proceeding through certain parts of the yard and over the bridge, were subject to orders from Louisville & Nashville employes, there was no proof that the Illinois Central train, at the time and place of the injury, was subject to such orders, much less orders with respect to its rate of speed or the giving of warning.   On the contrary, the evidence shows that the train which struck appellant had entered the interlocking system and was proceeding within its limits at the time of the injury.   From that point it had to travel nearly five hundred feet before it reached the Louisville & Nashville main track which runs over the bridge.   It was also shown that the interlocking system is controlled from the tower house by the tower man; that he gave the signals and allowed trains to enter the interlocker; that he alone designated the track on which a train should run; that he could permit trains to run anywhere within the interlocker; that he had authority to allow a train to start to the bridge but not go over it, and that he was an employe of the Illinois Central Railroad.   Therefore, the case is simply one where the negligence, if any, was the negligence of an Illinois Central crew, engaged in the operation of a train which was subject to their control, and not to the control of the Louisville & Nashville Railroad Company.

No liability on the part of the Louisville & Nashville Railroad Company having been shown, it follows that the court did not err in directing a verdict in its favor.

As the Illinois Central train which struck and injured appellant was not subject to the control of the Louisville & Nashville Railroad, it necessarily results that the rejection of evidence of the habitual use of the tracks by empoyes at the place of the accident, and of the custom of the Illinois Central Railroad to run its trains at an excessive rate of speed and without sufficient warning, was not prejudicial error.

Judgment affirmed.