## Moody v. Consolidated Coach Corporation et al.

(Decided March 14, 1933.)

R. H. TOMLINSON, MOODY & BERRY for appellant.
R. W. KEENON for appellees.

Opinion of the Court by Judge Richardson—Reversing.

The determinant question presented by this appeal is the liability of the Consolidated Coach Corporation as the lessor of a permit granted by the commissioner of motor transportation of Kentucky to operate motor vehicles as a common carrier of passengers on a certain state highway, over a regular route or between fixed termini. The Consolidated Coach Corporation is a corporation organized under the laws of Kentucky, authorized to, and actually engaged in, the operation of motorbuses as such carrier in the state of Kentucky, over the highways of the state, between fixed termini, or over regular routes. The sections of the Statutes by virtue of which the permit involved was issued and enjoyed are section 2739j-3 et seq.

Section 2739j-3 empowers the commissioner of motor transportation to grant a certificate of public convenience and necessity to any person, firm, or corporation, desiring to engage in the transportation of persons for hire, by motor vehicles on any public highway in this state, between fixed termini or over a regular route.

Section 2739j-38a requires that, before the certificate is issued, the applicant shall furnish surety by filing with the commissioner to whom the application was first made, good and sufficient bond with adequate corporate surety, payable to the commonwealth of Kentucky, which shall bind the obligors therein to pay on a final judgment rendered against such motor carrier, arising out of the death or injury of any passenger or passengers or damage to property while in transit, or injury to other persons or property, or any act or omission connected with the operation of such motor carrier, which shall be in such penal sum as the commissioner may deem necessary to protect the interest of the public, without regard to the number of persons or

amount of property involved. Instead of such bond, the commissioner may accept a policy of insurance or other contract in writing, deemed by him adequate, by which any surety company or insurance company authorized to execute such contract shall assume the liability prescribed by this section, or the commissioner may exempt the holder of such certificate on due assurance of the payment of any and all damages it may be liable for, as the result of the negligent operation of the proposed service to the extent of the insurance and bond herein required, etc.

The Consolidated Coach Corporation obtained from the commissioner of motor transportation a certificate of permit No. 5139 to operate a bus line over the route between Pleasureville, via intermediate points, to the city of Louisville, on highway No. 37. At the same time it complied with the requirements of section 2739j-38a. On the 11th day of April, 1931, it leased to L. W. Culley a part of its permit which provides for the operation of motor vehicles over highway No. 37. The lease sets out in detail the duties and obligations of Culley, and specifically reserves the privileges and rights of the Consolidated Coach Corporation. It provides that Culley shall accept for transportation over the route any and all tickets sold or issued by the lessor and its duly authorized affiliated companies, the tickets to be redeemed by the lessor on the 20th day of each month, less 10 per cent. The lease was approved by the commissioner of motor transportation. Culley operated the line in the name of the "Kentucky Home Stages." He obtained from the Mercer Surety Company, a policy of insurance on the equipment used and operated over the route. On the 12th day of June, 1931, the insurance was canceled by the Mercer Surety Company, and notice thereof was given to the commissioner of motor transportation, who in turn notified Culley of the cancellation, and also the Consolidated Coach Corporation. The cancellation of his insurance was effective June 24, 1931. Culley was operating a bus by virtue of the certificate of permit granted to, and owned by, the Consolidated Coach Corporation, at the time Mrs. Moody claims she sustained damage to her automobile and injury of her person, as the direct and proximate result of the negligent operation of the bus in charge of Culley on highway No. 37.

The theory of the Consolidated Coach Corporation

is that its liability herein is controlled, and must be measured and determined by the law applicable to a private business corporation, i. e., one organized and conducted solely for the benefit of its stockholders. Mrs. Moody argues that there is a broad distinction between a private business corporation and a quasi public corporation, engaged in the business of a common carrier of passengers; that the latter is given large powers to enable it to accommodate the public, and is not permitted, in the absence of express legislation, to renounce its duty to the public or to disable itself from performing such duties, and that the lease in the present case does not relieve the Consolidated Coach Corporation, as a public service corporation, of its liability to the public for damages to the property or injury of the person of a member of the traveling public, resulting from the negligence of the lessee.

The Consolidated Coach Corporation, by the conditions, provisions, and terms of the lease, retains in itself all the authority and power incident to absolute ownership of the certificate and route, covered by it, with such stringent limitations and restrictions as to vest thereby in the lessee merely the capacity of an agent. However, in our determination of its liability herein, we shall not rest our conclusion on our construction of the lease, but will accept the Consolidated Coach Corporation's construction thereof.

The purpose of the incorporation of the Consolidated Coach Corporation, as it appears in the petition as amended, was to engage exclusively in the business of a common carrier of passengers on the public highways of this commonwealth. It is alleged that it engages solely in that business. It should be conceded that, before it engages in business on the state's highways, it is its indispensable duty to observe strictly the requirements of the Statues, supra. Its compliance therewith is a condition precedent to its right to use for business purposes the highways of the state. Whether the permit granted to it by the commissioner of motor transportation be considered in the technical sense of a privilege, license, or franchise, its obeying the statutes is an essential element of the permit and necessary to its rights to the enjoyment and use of the public highways as a common carrier of passengers for hire. It could not exercise such rights under its charter with-

out the permit. Only the permit confers the rights to the enjoyment and use of the highways designated in it, for business purposes, which, for its purposes, are the same as if it owned them absolutely. Its charter and the permit confer on it public rights on the highways, constructed at public expense for the benefit of the general public. It could not be granted or authorized to exercise such rights save in the consideration of the performance of a public duty. Therefore it is disabled to do any corporate act, such as leasing its charter or permit, or both, amounting to a renunciation of its duty to the public, without express legislative authority. Attorney General ex rel. Corporation Commissioner v. Haverhill Gas Light Company, 215 Mass. 394, 101 N. E. 1061, Ann. Cas. 1914C, 1266.

In Central Transportation Co. v. Pullman's Palace Car Co., 139 U. S. 24, 11 S. Ct. 478, 485, 35 L. Ed. 55, the principle was written in this language:

"The plaintiff, therefore, was not an ordinary manufacturing corporation, such as might, like a partnership, or individuals engaged as manufactures, sell or lease all its property to another corporation. * * * But the purpose of its incorporation, as defined in its charter, and recognized and conferred by the legislature, being the transportation of passengers, the plaintiff exercised a public employment and was charged with the duty of accommodating the public in the line of that employment, exactly corresponding to the duty which a railroad corporation or a steam-boat company, as a carrier of passengers, owes to the public, independently of possessing any right of eminent domain. * * * The plaintiff was not a strictly private, but a quasi public corporation; and it must be so treated as regards the validity of any attempt on its part to absolve itself from the performance of those duties to the public, the performance of which by the corporation itself was the remuneration that it was required by law to make to the public in return for the grant of its franchise."

To the same effect is the language of the court in Thomas v. West Jersey Railway Company, 101 U. S. 71, 83, 25 L. Ed. 950, as follows:

"Where a corporation, like a railroad company,

has granted to it by charter a franchise intended in large measure to be exercised for the public good, the due performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions which undertakes, without the consent of the State, to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden which it imposes, is a violation of the contract with the State, and is void as against public policy." Susquehanna Canal Co. v. Bonham, 9 Watts & S. (Pa.) 27, 42 Am. Dec. 315.

Section 203 of the Constitution of Kentucky embodies the same principle in this language:

"No corporation shall lease or alienate any franchise so as to relieve the franchise or property held thereunder from the liabilities of the lessor or grantor, lessee or grantee, contracted or incurred in the operation, use or enjoyment of such franchise, or any of its privileges."

Chesapeake & O. R. Co. v. Vaughan's Adm'x, 159 Ky. 433, 167 S. W. 141; Hunsaker's Adm'r v. Chesapeake & O. R. Co., 185 Ky. 686, 215 S. W. 552, 28 A. L. R. 117; Illinois C. R. Co. v. Sheegog's Adm'r, 126 Ky. 252, 103 S. W. 323, 31 Ky. Law Rep. 691; Clinger's Adm'x v. C. & O. R. Co., 128 Ky. 736, 109 S. W. 315, 33 Ky. Law Rep. 86, 15 L. R. A. (N. S.) 998; Raikes v. Payne, 198 Ky. 820, 249 S. W. 1020; McCabe's Adm'r v. Maysville & B. S. R. Co., 112 Ky. 861, 66 S. W. 1054, 1055, 23 Ky. Law Rep. 2328.

In the McCabe Case it was written:

"The franchises of a corporation are its property. The declaration that these, in case of a lease or alienation, shall not be relieved from the liability of the lessor or grantor, lessee or grantee, contracted or incurred in the use of the franchise, or any of its privileges, is, in substance, a declaration that the corporation shall not be relieved of such liability; for its existence is inseparable from all of its franchises. Under this section, therefore, no lease made by a corporation can exempt it from liability for the wrongs of its lessee. If the lease in question was made after the adoption of the

constitution, it would not exempt the lessor from liability, * * * but if it was made before the adoption of the constitution the result is the same."

In the same case the court again said:

"The defendant company, therefore, in reality still enjoys the benefits of its charter, and cannot be permitted to escape its corresponding obligations. * * * A grant to a corporation of a right to lay out, construct, and operate a railroad is the grant to the corporation of the capacity to exercise a portion of the powers of sovereignty for the purpose of making pecuniary profit to itself. This is its franchise. Such grants are never made except at the request of the corporation. In return, the corporation is held to have promised to pay just damages to any person injured by any want of care in using the right so granted. As the grant is of public right, in which every one of the public is a sharer, so the promise is to each one of the public. A due regard for the public rights obviously requires that a corporation which has asked for and received such a grant shall not be absolved from its promises except by an act of the legislature to that effect so distinct and unequivocal as not to be open to mistake. Nothing should be left to inference. * * * The sanction of the legislature was given to the contract as made by the parties, but added nothing by way of exemption from the primary responsibility of the lessor. * * * It was under a positive duty and obligation to the public, and the consent of the legislature to the making of the lease did not imply a discharge from the duty and obligation. * * * Where a corporation seeks to escape from the burden imposed upon it by the legislature, clear evidence of a legislative assent to such exoneration should be found."

In the Sheegog Case the above quotation was reiterated and approved. Again the principle was given approbation in Louisville Bridge Company v. Sieber, 157 Ky. 151, 162 S. W. 804; in Louisville & N. R. Co. v. Johnson, 168 Ky. 351, 182 S. W. 214, L. R. A. 1916D, 514; and in Swice's Adm'x v. Maysville & B. S. R. Co., 116 Ky. 253, 75 S. W. 278, 25 Ky. Law Rep. 436. The pronouncement in the Sieber, the McCabe, the Sheegog, and the Swice Cases was adhered to in McAllister v.

Chesapeake & O. R. Co. (D. C.) 198 F. 660, 663, Id., 243 U. S. 302, 37 S. Ct. 274, 61 L. Ed. 735.

Section 2739j-12 authorized the Consolidated Coach Corporation to lease its permit and route to Culley, but it does nothing by the way of exempting it of its primary responsibility to the general public, nor is there a statutory provision affording exemption.

Its responsibility is a concomitant of its franchise and certificate of permit, and is ineludible and enduring, for the period for which the certificate of permit was granted, unless it is abandoned or sold in conformity with the Statutes. Its certificate of permit creates and gives both value and virility to its rights to use the highways of the state as a common carrier, and its correlative responsibility to the public may not be eluded by the execution and delivery of a lease. The ownership of its franchise and the certificate of permit, and the receiving and enjoying the usufruct thereof, not the ownership of or title to the roadway on which the business of a common carrier is conducted, place upon it, and determine the nature and extent of, its responsibility to the public for the negligent exercise by the lessee of the license afforded by the permits.

The lease to Culley, indeed, merely conferred upon him the rights to contract to equip and operate the route covered by the permit. The grant of power to lease it and the route which it covers is one thing; the grant of absolution from its responsibility is another; and is not to be inferred from mere statutory authority to lease either the permit, route, or both. It may be absolved of its responsibility to the public and escape the liabilities of the lessee incurred in the operation, use, or enjoyment of its certificate of permit, or any use of its privileges, only by clear legislative consent within constitutional limitations, a question not now presented.

The bus which caused the damage to the automobile of Mrs. Moody and the injury of her person was at the time being operated by Culley over the route designated in the permit, by virtue of the certificate of permit owned by the Consolidated Coach Corporation by virtue of its charter, and from the operation thereunder it was receiving, by the terms of the lease, 10 per cent. of the earnings. The only difference between

the facts in the present case and those in the McCabe Case is, here death did not result, and the negligence causing the injury occurred on a state highway, whereas, in the latter, death resulted from negligence occurring in a street. In both cases the lessors and lessees were engaged in the business of common carriers under franchises granted by the commonwealth, using different mediums of transportation and types of roadways. The latter distinction is wholly immaterial.

Clara Moody, her son, daughter-in-law and granddaughter, were traveling in a westerly direction from Pleasureville toward New Castle, Henry county, Ky., on state highway No. 37. She owned the automobile driven at that time by her son, Clarence P. Kyle, when she claims the bus negligently operated by Culley collided with the automobile in which she was riding, striking it near the rear left wheel, causing her automobile to overturn and wreck, breaking one of her ribs, lacerating and bruising her back, shoulder, hip, arms, limbs, and other parts of her body. She filed this action against Culley, setting out these facts and fixing the damage to her automobile at $500, her personal injury at $5,000, and medical bills at $25. By an amended petition she made the Consolidated Coach Corporation a defendant, setting forth the nature of its business, its ownership of the permit, its leasing of the permit and route to Culley, and sought damage of it and Culley for her own injury on the highway and damage to her automobile by the negligent operation of the bus by Culley, by virtue of the permit.

Accepting the allegations as to the damage to the automobile and the personal injury of Mrs. Moody as true, which must be done on a demurrer, they are sufficient to show they were the proximate result of the negligent operation on highway No. 37, of the bus by Culley, while exercising the privilege existing by virtue of the permit No. 5139, issued to, and owned by, the Consolidated Coach Corporation. In the light of the principles reiterated herein, when the facts related by Mrs. Moody are reviewed and accepted, it is plain that both the Consolidated Coach Corporation and Culley are liable for the damage for which she sues.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.