## Hunsaker's Admrx. v. Chesapeake & Ohio Railway Co.

(Decided November 14, 1919.)

### Appeal from Boyd Circuit Court.

1.  Master and Servant—Lessor of Railroad—When Not Liable to
    Servant.—The owner and lessor or licensor of a railroad track,
    while liable to the members of the public for the negligent oper-
    ation of the road, and to the servants of the lessee or licensee for
    the negligent maintenance of the road and other permanent struc-
    tures, is not liable to its own servants for the negligent manage-
    ment and operation of trains under the control of the lessee or
    licensee, since its servants do not sustain to it the relation of be-
    ing members of the public within the rule referred to, but sus-
    tain the relation exclusively of master and servant.

2.  Master and Servant—Injury to Servant by Negligence of Lessee—
    Liability of Master.—If a servant of the lessor or licensor is in-
    jured through the negligence of the lessee or licensee, the master
    is not liable unless he violated his duty toward his servant of fail-
    ing to exercise ordinary care in furnishing the servant a safe place
    in which to work, or safe appliances with which to perform his
    work.

3.  Master and Servant—Liability of Lessor—Safe Place to Work.—It
    is not negligence per se for the owner of a railroad to permit an-
    other to operate it, either exclusively or jointly with him, and he
    is not liable to his servant for the negligence of such lessee or
    licensee, unless the danger which its negligence created was
    either actually or constructively known to the lessor for a suf-
    ficient length of time to enable it by the exercise of ordinary care
    to remove the danger created by such negligence, and where the
    negligence immediately produced the injury to the lessor's serv-
    ant, the latter will not be liable upon the ground of failing to fur-
    nish the latter a safe place in which to perform his work.

4.  Master and Servant—Appliances—Ordinary Care to Furnish.—A
    master is not an insurer of the safety of the place where he puts
    a servant to work, or of the safety of the tools which he furnishes
    to the servant, but is only bound to use ordinary care to furnish
    a reasonably safe place in which, or reasonably safe tools with
    which, to work.

R. D. DAVIS, C. W. DILLE and S. S. WILLIS for appellant.

WORTHINGTON, COCHRAN & BROWNING and PRITCHARD &
PUTNAM for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

James A. Hunsaker was, and had been for a long
while, in the employ of the appellee and defendant be-

low, Chesapeake & Ohio Railway Company, hereinafter referred to as the Railway Company, in its yards in Ashland, Kentucky, in the capacity of conductor of a switching crew. The Ashland Coal & Iron Railway Company (hereinafter referred to as the Ashland Company), a Kentucky corporation, owned and operated some of the tracks in the yards in Ashland in which Hunsaker operated his train, while the railway company owned other tracks in the same yards with the joint privilege on the part of each company to use for certain purposes all of the tracks.

Tracks numbers four and five, and the main track, were owned by the defendant railway company. Three other tracks paralleling the ones mentioned, as well as some connecting with the ferry crossing the Ohio river, and others leading to different parts of the city of Ashland, were owned by the Ashland company.

On March 25, 1915, the deceased, with his crew, was making up a train for the defendant, and had pushed about twenty-five cars upon the main track; they were going to pick up other cars from track number five and put them into the train, which cars had been placed upon that track by the Ashland company, it having brought them from other roads to be transported by the defendant, railway company. There was a space between two of the five cars and the other three, and for some cause unexplained in the record, Hunsaker went into that space. Just as he did so the Ashland company shoved a refrigerator car upon that track, which caused the two cuts of the five cars to come together with such force that Hunsaker was caught between the couplings and killed.

Two separate suits were filed by the plaintiff as administratrix, one against the Ashland company and the other against the defendant, railway company, to recover damages for his death. The one was brought for ordinary negligence under the state law, while the other (being the one now under consideration) sought a recovery under the Federal Statute known as the Employers' Liability Act, it being charged that the deceased was at the time of sustaining his injuries engaged in interstate commerce, as was also the defendant, and that it was negligent in failing to furnish deceased a safe place in which to work and safe appliances with which to perform it, the appliances complained of being defective automatic couplings, which was in violation of the Federal Statute

upon that subject. Issues were made in each case, and
upon trial the court sustained a motion made in each of
them to direct a verdict in favor of defendants. Upon
appeal from the verdict in favor of the Ashland company
this court in the case of Hunsaker's Admrx. v. Ashland
Coal & Iron Railway Company, 181 Ky. 598, reversed the
judgment upon the ground that there was proof of the
negligence of defendant in that suit, and that the case
should be submitted to the jury under appropriate in-
structions. The facts relative to the local situation, as
well as to the manner in which the accident occurred, are
set out with considerable detail in that opinion, to which
reference is here made.

On this appeal from the judgment rendered upon the
directed verdict in favor of the defendant railway com-
pany it is insisted that there is sufficient evidence sup-
porting the allegations of the petition to authorize a sub-
mission of the issues to the jury, and that the court erred
in failing to do so. It does not appear upon what terms
the two companies jointly operated the various tracks in
the yard where the accident occurred. But that the
joint operation was under some kind of arrangement
agreeable to and acceptable by the defendant railway
company is admitted. It is quite clear, however, that the
liability of the defendant, if any, can not be put upon any
ground growing out of nonperformance of its duties as
lessor or licensor, since the active negligence, if any,
which brought about the death of the deceased was that
of the Ashland company, and for whose negligence the
defendant as lessor or licensor would be liable only
if the deceased Hunsaker sustained to it the relation
of third person or a member of the public. Just
when and to what extent the lessor or licensor who owns
a railroad is liable to those sustaining only such relations
for injuries occurring through negligence of the lessee or
licensee, the courts of the different states are not alto-
gether in harmony. But in this state the owner of the
track who leases it or grants joint operating privileges
to another is liable to third persons and members of the
public for the negligent operation and handling of trains
over the road by the lessee or licensee (L. & N. R. R. Co.
v. Breeden's Admrx., 111 Ky. 729), as well as for in-
juries resulting from the negligent omission to maintain
its tracks, station houses, &c., in reasonably safe condi-
tion, and that servants of the lessee or licensee are third

persons within this rule insofar as to make the lessor liable to them for any failure to maintain the road, station houses, &c., in reasonably safe condition. Swice's Admrx. v. M. & B. S. R. Co., 116 Ky. 253; I. C. R. R. Co. v. Skeegog's Admr, 126 Ky. 252; Clinger's Admr. v. C. & O. Ry. Co., 128 Ky. 736; and C. & O. Ry. Co. v. Vaughan's Admrx., 159 Ky. 433. But it has never been held by any court, so far as our research goes, that the servant of a lessor or licensor is a member of the public or a third person within the above rule. As between the lessor and his servant the relation is purely contractual, and the duties of the one to the other arise exclusively from such contractual relation. This distinction is recognized in the case of Charles A. Lee v. Southern Pacific Railroad Company, 116 Cal. 97, referred to and quoted from with approval in the Skeegog case, wherein it is said:

"But where injury has resulted to an employe of the operating company by reason of a failure of the lessor to perform its public duty, as in the failure to construct a safe road, as is here charged, the injured employe may sue the lessor company, as one of the public, for its failure to perform that duty, and not because between himself and the lessor company the relation of employe and employer, or any relation of contractual privity, exists."

The distinction is also recognized by the learned authority of Elliott on Railroads, vol. 1, sec. 472, wherein, upon the point under consideration, he says:

"In the case of an employer and employe there is no consideration of public policy involved, such as there is in cases of third persons, for the employe by a voluntary contract creates the relation of employer and employe. His rights are such as his contract creates, the duty springs from the contract and but for the contract he would really have no right on the road or any of its equipments. The difference between cases where third persons sue for injuries and cases where the action is by an employe is so wide that cases deciding that there is a liability to third persons are hardly in point."

It results, therefore, that if there is any liability of the defendant for the death of the deceased, it grows alone out of the relation of master and servant and must be rested upon some violation of duty which the defendant owed to the deceased as its servant.

As we have seen, it is insisted that defendant as master violated the two duties of (a) failing to furnish the

deceased a safe place to work, and (b) failing to furnish properly equipped cars which he was required to handle while performing his work. Considering these in the order named—(a) the rule with reference to both of them is that the master is not an insurer of the safety of the place or of the tools or appliances which the servant is required to use in the performance of his work. The law requires only that the master shall exercise reasonable and ordinary care to provide both a safe place and safe tools and appliances. When he has performed this duty he has done all that the law requires of him. 26 Cyc. 1102; Wilson v. Chess-Wymond Co., 17 Ky. 567; Adams Express Co. v. Smith, 24 Ky. L. R., 1915; Tradewater Coal Co. v. Johnson, 24 Ky. L. R. 1777; American Milling Co. v. Bell, 146 Ky. 68; Shinn Glove Co. v. Sanders, 147 Ky. 349; Sunrise Coal Co. v. McDaniel, 150 Ky. 70; Interstate Coal Co. v. Molner, 150 Ky. 321; Interstate Coal Co. v. Shelton, 152 Ky. 92; Ada Coal Co. v. Linnville, 152 Ky. 2; C. & O. Ry. Co. v. Kelly's Admr., 160 Ky. 296; Pine Mountain Mfg. Co. v. Bishop, 160 Ky. 575; Lile v. Louisville Ry. Co., 161 Ky. 347, and Daniels v. Houston, Stanwood & Gamble Co., 161 Ky. 527. In the last case referred to, and which is but a repetition of what is stated in the other cases, the rule is thus stated:

"We have repeatedly held that the master is not an insurer of the safety of the place where he puts the servant to work. He is only bound to use ordinary care to furnish the servant a reasonably safe place to work. In order to recover, therefore, plaintiff must not only show that the place was unsafe, but that the master knew, or by the exercise of ordinary care could have known, of its unsafe condition."

In the instant case the danger producing the injury was exclusively the negligence of the Ashland company, the licensee of defendant's track, in shoving the refrigerator car on track number five, where the deceased was located, without sufficient warning. It was simultaneous with the injury, and there was no opportunity for the lessor to take notice of and remedy it. This case differs from the cases of Ligon v. Evansville Ry. Co., 165 Ky. 202, and Evansville Ry. Co. v. Ligon, 172 Ky. 631, relied on by appellant's counsel. In those cases it was found that the injured servant, while working at a place and with appliances furnished by another than his master, was performing services for the joint benefit of both, and

was held to be the servant of both at the time of the accident. Furthermore, under the facts of those cases the negligent third party was held to be the agent of the sued master, who was liable for the acts of the former.

Unless, then, it can be said that the permission of the defendant for the Ashland company to use track number five was *per se* negligence, there was no failure of the defendant to exercise ordinary care to provide the deceased with a safe place in which to perform his work. That such permission was not *per se* negligence we think there can be no doubt. The defendant had the right to presume that the Ashland company as a joint user of the track would do so in an ordinarily careful and prudent manner, unless perchance it had knowledge to the contrary. No such knowledge is shown, or attempted to be shown, either by allegation or proof in the case, and under the rule, *supra,* the defendant was not liable for the negligent act of that company, which, alone, produced the injury complained of.

However, we are not without direct authority from this state holding the defendant not liable under a similar state of facts. The case of Martin, Administrator, &c., v. Louisville & Nashville Railroad Company, 95 Ky. 612, was one brought against the appellee therein to recover for the death of James Smart, who was a switchman in the yards of the Louisville & Nashville Railroad Company in Central Covington. The defendant owned two tracks crossing each other at an acute angle. One of them, known as track number one, was also used, under some kind of traffic arrangement, by the Chesapeake & Ohio Railway Company. Its servants had, a few minutes before, negligently stopped a car so near the point of juncture that the deceased came in contact with it while riding on the side of a car on the other track, and he was knocked off and killed. From a verdict in favor of the Louisville & Nashville Railroad Company, plaintiff prosecuted an appeal, and this court affirmed the judgment in favor of the company. The court, after recognizing the rule that it would be the duty of the defendant to exercise care to see that the track was clear of obstruction, and that it would be liable for its failure to do so regardless of how or by whom the obstruction was created, said:

"But in the case at hand the obnoxious cars were not placed by him (engineer on defendant's train) and he is

without fault in the premises. So the yardmaster of the owner can not during every minute of time see that those who bring cars upon the yard leave them in their precise and proper places. We do not doubt that if these 'dead' cars had remained in their dangerous position such length of time as would have afforded the yardmaster a reasonable opportunity of discovering the danger, and he had failed to take steps to protect the workmen, negligence would be attributable to him and through him to his principal. Only a few minutes, however, elapsed from the time of the lodgment of the cars on track No. 1 before the accident occurred, and we are not disposed to regard this agent as neglectful of his duties. The case, therefore, as it is presented against the Louisville & Nashville road, need not be considered further.''

In that case the Louisville & Nashville Railroad Company was the owner of both tracks, with a joint right of use in the Chesapeake & Ohio Railway Company, whose negligence produced the danger from which the accident resulted. It had not been in existence for a sufficient length of time to enable the defendant and owner of the track (the L. & N. R. R. Co.) to discover and remove it by the exercise of ordinary care, and notwithstanding the fact that it rendered the place unsafe, the defendant was held not liable. The principles announced in that case must govern the instant one, not only because the case is a precedent involving similar facts, but because they are sound and in accord with the general principles of the law governing the rights of parties similarly situated.

The same conclusions would seem to apply to point (b) insisted upon, since it is not shown that the defective coupling, if it existed, was known to the defendant, or could have been known by it in time to make repairs before the happening of the accident. But whether so or not, the proof fails entirely to show that there was any defect in any of the couplings. Indeed, the fact of such defect is attempted to be shown only from the fact of the deceased going in between the cars, the argument being made that unless there was some defect he would not have gone between them. We fail to catch the logic of this argument, but if the circumstance of his going between the cars could be allowed to have any probative effect, it would necessarily be very infinitesmal, and the positive testimony by the witnesses shows that there was no defect

in the couplings on the cars complained of and where plaintiff sustained his injury.

We therefore conclude that the court properly sustained the motion, and the judgment should be and is affirmed.