**SOUTHERN RAILWAY COMPANY,**
Appellant,

v.

**KELLY CONSTRUCTION COMPANY and**
**Kelly Contracting Company, Appellees.**

**CINCINNATI, NEW ORLEANS AND TEX-**
**AS PACIFIC RAILWAY COMPA-**
**NY et al., Appellants,**

v.

**KELLY CONSTRUCTION COMPANY and**
**Kelly Contracting Company, Appellees.**

Court of Appeals of Kentucky.

Feb. 18, 1966.

Rehearings Denied Oct. 14, 1966.

Pleas Jones, Williamsburg, Robert Milby, Hamm, Taylor & Milby, London, for appellants.

Bradley & Bradley, Georgetown, Viley O. Blackburn, Smith & Blackburn, Somerset, for appellees.

HILL, Judge.

This is an appeal from a judgment entered pursuant to a jury verdict finding both parties guilty of negligence in a collision between a train and asphalt paver at a highway crossing.

At the time of the accident, the engine of the train was owned by Southern Railway Company, hereinafter designated as Southern, and under lease to appellant, Cincinnati, New Orleans and Texas Pacific Railway Company, hereinafter referred to as CNO&TP. The cars, caboose, and track were owned by CNO&TP. All operators of the train including Southern's engine were employed by CNO&TP.

The asphalt paver was owned by Kelly Construction Company and under lease to Kelly Contracting Company. We shall refer to Kelly Construction Company herein as Kelly #1 and to Kelly Contracting Company as Kelly #2.

It was on October 16, 1962, at Marsh Siding Crossing in McCreary County at a point where Kentucky Highway 700 crosses the track of CNO&TP that a passenger train struck the front end of the paver resulting in $13,800 damage to the paver; $14,953.60 damage to Southern's engine; and $1,641.93 damage to the track and property of CNO&TP.

Kelly #1 filed two suits on account of the collision. The first was against Southern for damage to the paver, in which Southern counterclaimed for its damage to the engine and filed a third-party complaint against Kelly #2. The second suit was filed by Kelly #1 against CNO&TP and four of the train crew, whose names are unimportant here. CNO&TP counterclaimed against Kelly #1 for its damage to track and other equipment and filed a third-party complaint against Kelly #2, seeking to recover its damages.

At the conclusion of a jury trial, a verdict was rendered finding all parties guilty of negligence and allowing no recovery for anyone. Southern and CNO&TP appeal, and Kelly #1 and Kelly #2 cross-appeal.

The joint brief filed on behalf of Southern and CNO&TP propounds these two questions quoted verbatim:

(1) "May the bailor of personal property recover damages for injury to personalty in the hands of the bailee from a third party even though the bailee might have been negligent, and did the Court err in refusing to sustain the Motion of the Southern for a directed verdict both as to the claim of the Kelly Construction Company, Inc., and on its Third Party Complaint against the Kelly Contracting Company, Inc.?"

(2) "Did the Court err in refusing to sustain the Motion of the Cincinnati, New Orleans and Texas Pacific Railway Company, H. E. Chapman and G. T. Jones for a directed verdict as to the claim of the Kelly Construction Company and of the Cincinnati, New Orleans and Texas Pacific Railway Company for a directed verdict on its third party claim against the Kelly Contracting Company?"

Appellees, Kelly #1 and Kelly #2, contend that "neither Southern nor CNO&TP may recover"; that Kelly #1 is entitled to recover its damages from both Southern and CNO&TP; and that the trial court erred in refusing to give a last clear chance instruction.

First, we shall examine the facts to determine whether the verdict of the jury is supported by substantial evidence. If it is, we may not disturb it.

Kentucky Highway 700 at the point of collision runs east and west; the railroad track runs north and south at about right angles to the highway. Appellant's train was proceeding south immediately before the accident. The greater part of the paver was on the west side of the track. There was visibility to the north from the crossing for 2,250 feet to the first curve. It was daylight, although undisputed evidence showed the engine had its headlights on. The train was traveling about fifty-five miles per hour and was about twenty minutes late. At the time of the collision, the operator had gotten the paver in gear and had partially removed it so that it projected over the west rail about two feet when struck.

A dump truck was standing on the track when the train first came into view. The train crew saw it move away when the train was within 2,000 feet north of the crossing, but they denied seeing the paver, which was a dull color, until the engine was within 200 feet of the paver. The engineer stated he began blowing the whistle before reaching the whistle post, which was 800 feet north of the crossing, although there was evidence for appellees that the whistle did not sound until it was within 100 feet of the paver. The engineer testified he did not discover the paver was over the west rail until the front end of the train was within 200 feet of the crossing; that he applied the mechanical brakes, which were not sufficient to stop the train in time to avoid the accident; and that he did not apply the emergency brakes because it was likely to endanger human lives; that he was ringing the bell and sounding the horn from the whistle post 800 feet north; that the mechanical brakes were in good condition. There was evidence the train was composed that day of fifteen cars weighing about 1,400 tons and would require about 1,500 feet to stop with the emergency brakes, and 2,250 feet without them.

There is evidence the operator of the paver and other fellow employees first saw the train about one-half mile away; that two to three minutes is required to get the paver in gear; and that it travels about twenty feet per minute.

■ All this evidence and more was submitted to, and obviously considered by, the jury. On disputed questions of fact, this court will not substitute its judgment for the verdict of the jury nor otherwise disturb the verdict if it is supported by substantial evidence. Wood v. Wood, Ky., 264 S.W.2d 260 (1954). In this case, we conclude the verdict was supported by substantial evidence.

Having so concluded, the claims of CNO &TP against Kelly # 1 and Kelly # 2 is laid to rest. Kelly #2 made no claim, but, to repeat, its employees have been found guilty of negligence. This leaves for our consideration the claims of Kelly #1 and Southern for the damages to their respective properties.

It is the position of Kelly # 1, that inasmuch as its paver was leased to Kelly #2 without reservation of any right of control or supervision, the negligence (determined by the jury) of Kelly #2 is not imputed to it, and therefore it is entitled to recover damages from Southern and CNO&TP, and that Southern cannot avoid liability under Section 203 of the Constitution of Kentucky.

A similar position is taken by Southern with reference to its claim for damages against Kelly #1 and Kelly #2. Southern maintains the negligence of CNO&TP is not imputed to it. Both claims led us to research of the law of bailments and negligence. In regard to bailments, however, we have met wtih a situation relating to the claim of Kelly #1 that renders it unnecessary for us to apply the rules of the bailment and negligence law to its claim.

■ It is admitted by Owen Kelly that he is president of Kelly #1 and Kelly #2; that his brother is vice-president, and his wife is secretary-treasurer of the two corporations; that the three of them are the sole directors and stockholders; that the same persons keep books for the two firms, each company contributing to their salaries; that the eight or ten regular employees of the two companies are the same. Creed Dillingham, foreman at the time of the accident, testified he was employed by Kelly #1 as did Eugene Horne, superintendent. This is denied, however, by Owen Kelly. Mr. Kelly admitted many of his employees do not know for which company they work. This is well demonstrated by the superintendent and foreman. Not only do the ownership and management of the two corporations indicate identical corporations, but the similarity of names accords with the proposition that the two companies are one and the same. Indeed, the similarity of names has been confusing to this

entire court. It is also admitted by Owen Kelly that he furnished the paver as a means of promoting the sale of asphalt material. Without implying any bad faith in organizing and operating two identical corporations with similar names, we conclude for the purposes of this case that Kelly #1 and Kelly #2 are one and the same; and that the negligence of Kelly #2 is imputed to Kelly #1 so as to preclude its recovery of damages from either Southern or CNO&TP.

We come now to the claim of Southern and the rules of bailment.

To review briefly, it is shown that Southern leased the engine in question to CNO&TP without exercising any control or supervision over it at the time of the accident. CNO&TP has been found guilty of negligence, although Southern does not claim damages from CNO&TP. So has Kelly #2. Our conclusion that the negligence of Kelly #2 is imputed to Kelly #1 places the two corporations in the same legal position insofar as the claim of Southern is concerned. Our question, therefore, boils down to this: Is the negligence of CNO&TP imputed to Southern so as to defeat the claim of Southern?

By the great weight of authority, "The bailor, as the general owner of the property, may assert his title as against third parties." 8 C.J.S. Bailments § 39 p. 469.

We read in 65 C.J.S. Negligence § 161 b, p. 804 that:

"As a general rule, in the absence of statute, the negligence of the bailee is not imputed to the bailor where the latter does not have control, or the right and duty to exercise control, of the conduct of the bailee with respect to the acts or omissions which caused the injury to the thing bailed.

"Although in some jurisdictions it has been held that, where the negligence of a bailee concurred with that of a third person in causing injury to the subject of the bailment, such negligence, by reason of the existence of the relation of bailee and bailor, is imputed to the bailor," (citing two Texas cases) "the weight of authority now supports the view that, in the absence of statutes requiring a different holding, the negligence of the bailee is not imputed to the bailor where the latter does not have control, or the right and duty to exercise control, of the conduct of the bailee with respect to the acts or omissions which caused the injury to the thing bailed."

It is interesting to note that the "some jurisdictions" referred to in the above quotation from 65 C.J.S. listed only two cases from the state of Texas, while the "weight of authority" is represented by cases from the District of Columbia, Kentucky, Louisiana, Maine, Minnesota, New York, and Tennessee. The states of Arkansas, Ohio, Indiana, and Pennsylvania are listed as having ruled inconsistently on the question.

In this jurisdiction, we have followed the great weight of authority. Cf. White v. Saunders, 289 Ky. 268, 158 S.W.2d 393, 395 (1942), wherein the rule is clearly announced as follows:

"in short, counsel contend that where property in the hands of a gratuitous bailee is injured by a third person contributory negligence of the bailee is imputed to the bailor.

"Apparently this question has not been decided in our jurisdiction and there seems to be considerable division of opinion with reference thereto. Counsel for appellant candidly concede that the weight of authority is against them and this seems to be the case. See 45 C.J. 1027 and 3 R.C.L. 146. In the latter authority it is pointed out that the later cases have manifested a decided trend in favor of the view that contributory negligence of a bailee is not imputable to the bailor so as to de-

bar him from bringing an action for an injury to the subject of the bailment. We prefer to adopt this latter view, basing our conclusion chiefly on the considerations that such a bailor does not have control, or the right or duty to exercise control, of the conduct of the bailee in regard to the acts of the bailee causing the injury to the subject of the bailment and that there is no privity of contract in such cases as in engagements between principal and agent and master and servant."

The majority rule adopted in this jurisdiction has also been announced in 8 Am. Jur., Bailments, Section 253, p. 1139; 6 A. L.R., p. 316; and 30 A.L.R., p. 1248.

It is insisted by appellees that Section 203 of the Constitution of Kentucky imputes to Southern, as lessor of its engine, the contributory negligence of CNO&TP. We quote from Section 203: "No corporation shall lease or alienate any franchise so as to relieve the franchise or property held thereunder from the liabilities of the lessor or grantor, lessee or grantee, contracted or incurred in the operation, use or enjoyment of such franchise, or any of its privileges."

In a long line of cases, this court has construed Section 203 in tort actions to hold lessors liable for obligations growing out of the negligence of lessee. Cf. Chesapeake & O. Ry. Cc. of Kentucky v. Vaughan's Adm'x, 159 Ky. 433, 167 S.W. 141 (1914); Hunsaker's Adm'x v. Chesapeake & O. Ry. Co., 185 Ky. 686, 215 S.W. 552, 28 A.L.R. 117 (1919); Louisville & N. R. Co. v. Breeden's Adm'x, 111 Ky. 729, 64 S.W. 667 (1901); and Underwood's Adm'r v. Illinois Cent. R. Co., 103 S.W. 322, 31 Ky.Law.Rep. 595 (1907). Unquestionably under these authorities, the lessor of a railroad franchise or a part of its property cannot avoid liability for damages caused by the negligence of the lessee of its franchise or property. But our question is not whether the lessor can avoid liability for its lessee's negligence, but whether the negligence of lessee is chargeable or imputed to lessor so as to prevent lessor from recovering damages done to its property by the joint negligence of its lessee and a third party. A majority of this court is of the opinion such negligence is not imputed to lessor within the proper interpretation of Section 203 of our Constitution. Therefore, we conclude Southern is entitled to recover the damages to its engine. Its recovery, however, must be limited to Kelly #2, in view of the fact that the counterclaim of Southern has been dismissed against Kelly #1 pursuant to a statement of counsel for Southern that, "We can agree that the counterclaim should be dismissed as against the Kelly Construction Company."

Wherefore, the judgment is reversed on the appeal and affirmed on the cross-appeals with directions to enter judgment in conformity with this opinion.